WILLIAM A. McNEIL v. HARTFORD ACCIDENT AND INDEMNITY COMPANY

No. 8610SC821

(Filed 17 February 1987)

**Insurance § 69.4— automobile insurance—hit-and-run accident—physical contact requirement met in "chain collision"**

In a "hit-and-run" collision the physical contact requirement for uninsured motorist coverage is satisfied where the physical contact arises between the hit-and-run vehicle and plaintiff's vehicle through intermediate vehicles involved in an unbroken "chain collision" which involves the hit-and-run vehicle; therefore, in an action by plaintiff to recover on an insurance policy with defendant which included an uninsured motorist endorsement, the trial court erred in granting summary judgment for defendant where the pleadings and discovery materials created a genuine issue of material fact as to whether the hit-and-run vehicle caused plaintiff's alleged damages in an unbroken "chain collision."

APPEAL by plaintiff from *Farmer, Judge.* Judgment entered 30 May 1986 in WAKE County Superior Court. Heard in the Court of Appeals 7 January 1987.

Plaintiff had an insurance policy with defendant covering his 1980 Audi automobile that included an uninsured motorist endorsement. On 13 October 1980 plaintiff was involved in a multi-car accident in the City of Durham. Plaintiff subsequently brought this action seeking compensation from defendant for injuries he allegedly sustained in this accident pursuant to the uninsured motorist endorsement.

Plaintiff's complaint alleged, in pertinent part:

McNeil v. Hartford Accident and Indemnity Co.

3. That on the 13th day of October, 1980, the plaintiff, was operating a 1980 Audi automobile, vehicle identification number 81A172948, the same being owned by his spouse, Allene W. McNeil.

4. That on the aforesaid date, the Plaintiff was operating the said Audi automobile in a northerly direction on University Drive in the City of Durham, County of Durham, State of North Carolina, when he was struck from the rear by a 1966 Chevrolet automobile being driven by Larry Mumford, which had been struck in the rear by a 1979 Pontiac automobile being driven by Mary Jo Carelli, which had been struck in the rear by a vehicle which left the scene of the accident and its driver and/or owner could not be determined.

Defendant admitted these allegations in its answer.

Defendant submitted the deposition of Mary Jo Carelli in which she states, in pertinent part, that:

Q. Will you describe to me what happened on the 13th day of October, 1980, how the accident happened?

. . .

A. I was coming from Academy Road, going on to University Drive.

Q. Is there a stop sign there?

A. There is a stop light right there.

Q. And it's—what was the traffic signal light when you came to the intersection?

A. It was red. I had to come to a stop. I was stopped.

. . .

Q. All right, after you came to the stop sign, or stop light on Academy Road, then you moved forward and made a left turn into University Road, is that correct?

A. Correct.

Q. And at that time, what traffic did you observe?

A. There was traffic on both sides of me.

Q. How far did you move from the time you left Academy Road, the intersection of Academy Road, into University Drive, before a collision occurred?

A. I really couldn't tell you how many feet it was. It wasn't very far, because Merrill Lynch, the new building was placed right there directly on the corner.

Q. Would you draw that building?

A. Merrill Lynch was right there on the corner just being put in, and I was going to make the turn north.

Q. Is it two-lane traffic?

A. Yes. It is two-lane traffic Uh-huh (yes). This road is two ways. It narrows here to one. The car was turning—the first car was turning into Merrill Lynch.

Q. The first car was turning left into this—which place is it there?

A. Merrill Lynch, I guess, is who it is.

Q. Right. Did you see that vehicle when it was stopped?

A. Yes. I saw the car stop. I did not see the car stop, I can't say that. The car in front of me stopped. I heard the tires squeal. I saw them coming to an abrupt stop. I did the same thing. I proceeded to stop.

Q. The car in front of you?

A. Had stopped dead. He was making a turn.

Q. Then, there was a car behind the car in front—

A. Uh-huh (yes).

Q. —and you were the third car in line?

A. Correct. I was the third car.

Q. All right, did the second car in line hit the first car in line before any collision occurred between your car and that vehicle?

A. Yes, it did.

Q. Go ahead and explain.

A. This car had stopped, as I said, abruptly. It had tried to make a turn to here. The second car hit into it. I was coming from the turn, proceeding down University and tried to stop myself. I did stop. I came very close to hitting that car myself, but upon getting to a stop, a fourth car came in the picture and hit me from the rear, which just jolted me on into the second car.

Q. Was it a rather violent collision?

A. No, sir. It didn't really produce much damage at all.

. . .

Q. In the point of time, of seconds if necessary, how many seconds, if you can tell me, was it between the time that the first — the second vehicle in the line struck the first vehicle in the line, and then the other collision?

A. I couldn't tell you that. It was so long ago. I'm just trying to answer as best I can.

Q. But there was some short period of time between the first collision, between the second car in line and the first car in line and the collision with your car, is that correct?

A. Oh, yes. I'm sure.

The trial court granted defendant's motion for summary judgment, and plaintiff appealed.

*Thigpen, Blue, Stephens & Fellers, by Carlton E. Fellers, for plaintiff-appellant.*

*Leboeuf, Lamb, Leiby & Macrae, by R. Bradley Miller, for defendant-appellee.*

WELLS, Judge.

Plaintiff contends that the court erred in granting defendant's motion for summary judgment. We agree.

In order to show that he is entitled to the benefits under the uninsured motorist endorsement, plaintiff must show that: (1) he is legally entitled to recover damages, (2) from the owner or oper-

ator of an uninsured automobile, (3) because of bodily injury, (4) caused by accident and (5) arising out of the ownership, maintenance or use of the uninsured automobile. *Williams v. Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102 (1967).

N.C. Gen. Stat. § 20-279.21(b)(3)(b) provides:

> Where the insured, under the uninsured motorist coverage, claims that he has sustained bodily injury as a result of collision between motor vehicles and asserts that the identity of the operator or owner of a vehicle (other than a vehicle in which the insured is a passenger) cannot be ascertained, the insured may institute an action directly against the insurer . . . .

Our courts have interpreted this statute to require physical contact between the vehicle operated by the insured motorist and the vehicle operated by the hit-and-run driver for the uninsured motorist provisions of the statute to apply. *Hendricks v. Guaranty Co.*, 5 N.C. App. 181, 167 S.E. 2d 876, *cert. denied*, 275 N.C. 594 (1969). *See also East v. Insurance Co.*, 18 N.C. App. 452, 197 S.E. 2d 225 (1973). The physical contact requirement protects against fraudulent or fabricated hit-and-run claims by plaintiffs seeking to collect insurance from an accident actually caused by their own negligence. 7 Am. Jur. 2d, *Automobile Insurance* § 300.

The dispositive question for this appeal is whether the physical contact requirement is satisfied where the physical contact arises between the hit-and-run vehicle and plaintiff's vehicle through intermediate vehicles involved in an unbroken "chain collision" which involves the hit-and-run vehicle.

We hold that, if plaintiff can show at trial that a collision occurred between the hit-and-run vehicle and Ms. Carelli's vehicle and that this collision propelled Ms. Carelli's vehicle into Mr. Mumford's vehicle, and that this second collision propelled Mr. Mumford's vehicle into plaintiff's vehicle, then under these circumstances, the physical contact requirement has been satisfied, albeit intermediate and indirect.

Defendant presented evidence through the deposition of Ms. Carelli suggesting that Mr. Mumford's vehicle collided with plaintiff's *before* the hit-and-run vehicle collided with Ms. Carelli's. At trial, plaintiff will have the burden of proving that his damages

were indirectly caused by the hit-and-run vehicle's collision with Ms. Carelli's car and were not the result of an *earlier* collision between Mr. Mumford's vehicle and plaintiff's vehicle *prior to* the arrival of the hit-and-run vehicle. For now, however, the pleadings and discovery materials create a genuine issue of material fact as to whether the hit-and-run vehicle caused plaintiff's alleged damages in an unbroken "chain collision."

Accordingly, we hold that the trial court erred in granting defendant's N.C. Gen. Stat. § 1A-1, Rule 56 motion for summary judgment.

Reversed and remanded.

Judges MARTIN and PARKER concur.