JAMES J. ANDERSEN, JR., INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF SAUNDRA L. ANDERSEN, DECEASED, AND THE ESTATE OF JOHN LAURITS ANDERSEN, DECEASED v. MARILYN COMBS BACCUS, MURRAY ELTON BACCUS, AND AN UNKNOWN PERSON

No. 921SC155

(Filed 16 February 1993)

1. **Insurance § 1165 (NCI4th)— uninsured motorist coverage— requirement of physical contact**

Plaintiff was not entitled to recover from State Farm pursuant to the uninsured motorist statute, and the trial court erred by granting summary judgment for plaintiff on this issue, where the unidentified motor vehicle which allegedly caused the accident did not make physical contact, directly or indirectly, with plaintiff's vehicle. Although dicta in *Petteway v. South Carolina Ins. Co.*, 93 N.C. App. 776, indicated that the collision required by the statute was not restricted to particular vehicles, that statement conflicts with prior traditional interpretations requiring a collision, direct or indirect, between the insured's car and that of the hit-and-run driver. This interpretation is further supported by the fact that the legislature has amended the statute subsequent to the first interpretation requiring physical contact between the insured and the hit-and-run driver and has not chosen to indicate that physical contact is not required. Any shift away from the physical contact requirement must derive from legislative action or action by the Supreme Court. N.C.G.S. § 20-279.21.

**Am Jur 2d, Automobile Insurance § 318.**

**Uninsured motorist indorsement: validity and construction of requirement that there be "physical contact" with unidentified or hit-and-run vehicle. 25 ALR3d 1299.**

ANDERSEN v. BACCUS

[109 N.C. App. 16 (1993)]

**2. Negligence § 6 (NCI4th)— negligent infliction of emotional distress—automobile accident—spouse arriving after accident**

The trial court erred by granting summary judgment for defendants on a claim for negligent infliction of emotional distress arising from an automobile accident where plaintiff was brought to the scene before his pregnant wife was freed from the wreckage, but did not witness the accident. Although this panel of the Court of Appeals felt that this claim goes beyond the holding in *Johnson v. Ruark Obstetrics*, 327 N.C. 283, nothing distinguishes this case from *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 108 N.C. App. 668, and the Court felt it must follow precedent.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-7.**

**Modern status of intentional infliction of mental distress as independent tort; "outrage". 38 ALR4th 998.**

Appeal by defendant insurance company from Orders entered 22 October 1991 and 4 November 1991, and by plaintiff from Order entered 4 November 1991 by Judge Howard R. Greeson, Jr. in Pasquotank County Superior Court. Heard in the Court of Appeals 14 January 1993.

*D. Keith Teague, P.A., by D. Keith Teague and Joseph H. Forbes, Jr., and Bailey & Dixon, by Gary S. Parsons and Rodney B. Davis, for plaintiff.*

*Baker, Jenkins, Jones & Daly, P.A., by Robert C. Jenkins and R.B. Daly, Jr., for defendants Marilyn Combs Baccus and Murray Elton Baccus.*

*Hornthal, Riley, Ellis & Maland, by L.P. Hornthal, Jr. and John D. Leidy, for defendant State Farm Insurance.*

WYNN, Judge.

The facts of the present case are as follows: just prior to the subject accident on 5 February 1988, Saundra Andersen stopped her automobile at a stop sign in the eastern lane of Simpson Ditch Road where it intersects with U.S. 17, a four-lane highway in Pasquotank County. Defendant, Marilyn Baccus, traveled north in the outside lane of U.S. 17 at approximately 55 miles per hour. As Mrs. Baccus approached the intersection of Simpson Ditch Road

and U.S. 17, Mrs. Andersen was on her right. A Ford station wagon, operated by an unidentified person, crossed the subject intersection west to east in front of Mrs. Baccus as she approached the Simpson Ditch Road intersection. Mrs. Baccus swerved to avoid the station wagon and ran off the road to the right, colliding with Mrs. Andersen's vehicle. The Ford station wagon continued through the intersection down Simpson Ditch Road and neither it nor its driver has ever been identified. The station wagon never made contact with either Mrs. Andersen's or Mrs. Baccus' vehicle.

Mrs. Andersen's husband, the plaintiff James Andersen, was brought to the scene of the accident before Mrs. Andersen was freed from the wreckage, but did not witness the accident. Once freed, Mrs. Andersen was taken to Albemarle Hospital, where on 6 February 1988 she gave birth to a stillborn son, John Laurits Andersen. Mrs. Andersen did not recover from her injuries and died on 26 March 1988.

Mr. Andersen brought suit for the wrongful death of his wife and unborn son and for negligent infliction of emotional distress. The complaint named as defendants Marilyn Combs Baccus; her husband and the registered owner of the vehicle, Murray Elton Baccus; and the Andersen's uninsured motorist carrier, State Farm Mutual Insurance Company [hereinafter State Farm].

· After discovery and prior to trial, State Farm moved for summary judgment on its Counterclaim seeking a declaratory judgment that the insurance policy does not provide uninsured motorist coverage for this collision because there was no contact between the unknown person's car and any other car involved in the accident. State Farm and the Baccuses both moved for summary judgment on the issues of Marilyn Baccus' negligence and on the issue of negligent infliction of emotional distress. The trial court denied State Farm's motion for summary judgment on its Counterclaim for a declaratory judgment regarding the uninsured motorist coverage; entered summary judgment on that issue (holding that there was uninsured motorist coverage) in favor of Mr. Andersen; and granted State Farm and the Baccuses' motions with respect to negligent infliction of emotional distress.

State Farm and Mr. Andersen appeal from the Orders.

ANDERSEN v. BACCUS

[109 N.C. App. 16 (1993)]

STATE FARM'S APPEAL

[1]  The issue we address here is: Does N.C. Gen. Stat. § 20-279.21 [the uninsured motorist statute] provide for uninsured motorist coverage where a phantom vehicle allegedly caused a collision between two other automobiles, but made no physical contact with either of the other automobiles? As set forth below, upon a consideration of the existing statutory and case law, we must answer no.

The relevant portion of the State Farm policy provides as follows:

*"Uninsured motor vehicle"* means a land motor vehicle or *trailer* of any type:

* * * *

3. Which, with respect to damages for *bodily injury only*, is a <u>hit and run</u> vehicle whose operator or owner cannot be identified and which hits:

a. you or any *family member*;

b. a vehicle which you or any *family member* are *occupying*; or

c. *your covered auto.*

(Italics in original, underlining added). The policy clearly requires that the unidentified vehicle make contact with the insured or the insured's auto. If that provision conflicts with the uninsured motorist (UM) statute, however, the statutory provision controls. *Hendricks v. United States Fidelity & Guaranty Co.*, 5 N.C. App. 181, 182-83, 167 S.E.2d 876, 877 (1969). The relevant portions of the UM statute require insurance companies to provide coverage in their policies for protecting those insured "who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles and hit and run motor vehicles* . . . ." N.C. Gen. Stat. § 20-279.21(3) (1992) (emphasis added). The statute further provides that "[w]here the insured . . . has sustained bodily injury as the result of *a collision between motor vehicles* and asserts that the identity of the operator or owner of a vehicle (other than a vehicle in which the insured is a passenger) cannot be ascertained, the insured may institute an action directly against the insurer . . . ." *Id.* § 20-279.21(3)(b). These provisions are to be liberally construed to provide "some financial recompense to innocent per-

ANDERSEN v. BACCUS

[109 N.C. App. 16 (1993)]

sons who receive bodily injury or property damage" due to the negligence of uninsured motorists or those unidentified drivers who leave the scene of an accident, *i.e.*, those who "cannot be made to respond to damages." *Hendricks*, 5 N.C. App. at 184, 167 S.E.2d at 878 (quoting *Moore v. Hartford Fire Ins. Co.*, 270 N.C. 532, 155 S.E.2d 128 (1967)). Despite the liberal construction to which the statute is entitled, it has traditionally been construed to require, where the claim arises from the negligence of an unidentified motorist, that physical contact be made between the plaintiff's vehicle and that of the unidentified motorist. *See, e.g.*, *Hendricks*, 5 N.C. App. 181, 167 S.E.2d 876; *McNeil v. Hartford Accident & Indemnity Co.*, 84 N.C. App. 438, 352 S.E.2d 915 (1987).

In *Hendricks*, the plaintiff suffered serious injury when he was forced to drive onto the left shoulder of the road and into a ditch to avoid a head on collision with a second car that had been forced into his lane by a third car. The third car drove off and was never identified. The parties stipulated that the driver of the third car was negligent, that there was no contributory negligence on the plaintiff's part, and that *there was no physical contact between the plaintiff's vehicle and that of the third party*. *Hendricks*, 5 N.C. App. at 182, 167 S.E.2d at 877. The plaintiff's insurance policy provided that such physical contact must occur, and the issue resolved on appeal was whether the policy conflicted with the UM statute. *Id.* This Court recognized that there was no conflict between the statutory term "hit and run vehicle" and a policy requiring "physical contact of such automobile with the insured or with an automobile occupied by the insured." *Id.* at 184, 167 S.E.2d at 878. The term "hit and run vehicle" was deemed to unambiguously require contact between the insured's motor vehicle and that of the hit and run vehicle. *Id.*

This Court also recognized the "physical contact" requirement in *McNeil*. The *McNeil* Court noted that this requirement had developed in an effort to protect insurance companies from fraudulent hit-and-run claims that in reality occurred due to the insured's own negligence. *McNeil*, 84 N.C. App. at 442, 352 S.E.2d at 917. That case involved a hit-and-run automobile that hit, not the plaintiff's car, but a third car which was then propelled into the plaintiff's car. Consistent with the purpose of the "physical contact" requirement, the Court concluded that that requirement is met "where the physical contact arises between the hit-and-run vehicle and plaintiff's vehicle through intermediate vehicles involved in

an unbroken 'chain of collision' which involves the hit-and-run vehicle." *Id.*

.It is Judge Phillips' decision in *Petteway v. South Carolina Ins. Co.*, 93 N.C. App. 776, 379 S.E.2d 80, *disc. rev. denied*, 325 N.C. 273, 384 S.E.2d 518 (1989), which apparently breaks from the traditional interpretation of the statute. In that case, the plaintiff was seriously injured after being run off the road by an unidentified motorist. Despite the fact that reliable witnesses testified that another car did exist and that it did run the plaintiff's car off the road, the trial court granted summary judgment in favor of the defendant insurance company. *Id.* at 777, 379 S.E.2d at 81. In so doing, however, the trial court apparently noted that "except for being constrained by the law there was sufficient evidence of independent verification of the unidentified motorist's existence and negligence to warrant the claim being made." *Id.*

In *Petteway*, this Court held that because the plaintiff's injuries did not result from a *collision between motor vehicles*, the lower court was correct in denying recovery. *Id.* at 777-78, 379 S.E.2d at 81. After resolving the issue before the Court, however, Judge Phillips went on to write that

> we do not approve the statements in the cited cases indicating that the "collision" required by the statute for uninsured motorist coverage is with the unidentified vehicle. In reaching that conclusion, the panel [in *Hendricks*] apparently gave more weight to the policy language about a "hit and run automobile" than it did to the statutory terms which no policy provision can override. The statutory phrase "collision between motor vehicles" is not restricted to any particular vehicles, restricting it by interpolation is not our office, and there is no reason to suppose that in using that unqualified phrase that the General Assembly intended to exclude from the statute's beneficent provisions victims of motor vehicle collisions caused by unidentified motorists whose vehicles have no collision.

*Id.* at 778, 379 S.E.2d at 81.

While we find Judge Phillips' dicta to be quite persuasive in that it appears to be consistent with the broad purpose of the statute, it conflicts with prior traditional interpretations by this Court requiring a collision, direct or indirect, between the insured's car and that of the hit-and-run driver. For that reason, we cannot

follow Judge Phillips' lead and hold in the present case that the collision between the Baccus and Anderson vehicles is sufficient for recovery under the uninsured motorist statute.

Our interpretation of the subject statute is further supported by the fact that the legislature has undertaken to amend the uninsured motorist statute subsequent to this Court's first interpreting it as requiring physical contact between the insured and the hit-and-run driver. To date, it has not chosen to amend the statute to indicate that that physical contact is not required. When the legislature acts, it is always presumed that it acts with full knowledge of prior and existing law; and where it chooses not to amend a statutory provision that has been interpreted in a specific, consistent way by our courts, we may assume that it is satisfied with that interpretation. *State v. Benton*, 276 N.C. 641, 658, 659, 174 S.E.2d 793, 804, 805 (1970); *Hewett v. Garrett*, 274 N.C. 356, 361, 163 S.E.2d 372, 375 (1969); *Whittington v. N.C. Dep't of Human Resources*, 100 N.C. App. 603, 606, 398 S.E.2d 40, 42 (1990). Thus, in consideration of the time-tested prior rulings of this Court, we are constrained to conclude that any shift away from the "physical contact" requirement must derive not from this Court, but from legislative action, or action by our Supreme Court which is the final arbiter for interpreting the statutes of this state. We hold, therefore, that Mr. Andersen is not entitled to recover from State Farm pursuant to the uninsured motorist statute because the unidentified motor vehicle did not make physical contact, directly or indirectly, with the Andersen vehicle.

ANDERSEN'S APPEAL

[2] Mr. Andersen assigns error to the trial court's granting summary judgment in favor of the defendants on his cause of action for negligent infliction of emotional distress.

A cause of action based on negligent infliction of emotional distress is controlled by our Supreme Court's decision in *Johnson v. Ruark Obstetrics and Gynecology Assoc., P.A.*, 327 N.C. 283, 395 S.E.2d 85, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). That case set forth three elements that must be alleged and proven in order to recover damages for such a cause of action: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Id.* at 304, 395 S.E.2d at 97.

## ANDERSEN v. BACCUS

[109 N.C. App. 16 (1993)]

The issue here concerns the second element: Whether genuine issues of material fact exist regarding whether it was reasonably foreseeable that the plaintiff would suffer severe emotional distress due to the alleged negligence of the defendant Mrs. Baccus and/or the unknown defendant. It should be noted that although we have determined that the uninsured motorist statute precludes Mr. Andersen's recovery from State Farm for the negligence of the unknown defendant, plaintiff remains free to pursue an action against the unknown defendant and as such the issue here applies to both the unknown defendant and to Mrs. Baccus. Because of our holdings in *Gardner v. Gardner*, 106 N.C. App. 635, 418 S.E.2d 260 (1992) (Eagles, J., dissenting) and in *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 108 N.C. App. 668, 424 S.E.2d 676 (1993), (Cozort, J., dissenting), we hold for the plaintiff and reverse the trial court.

Both *Gardner* and *Sorrells* rely on the *Ruark* decision which concluded that the foreseeability element "must be determined under all the facts presented, and should be resolved on a case by case basis by the trial court, and, where appropriate, by a jury." *Ruark*, 327 N.C. at 305, 395 S.E.2d at 98. The factors that should be considered in determining foreseeability "include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act." *Id.*

*Ruark* involved two parents who sued a hospital for negligent infliction of emotional distress arising from the death of their unborn child. The parents had been assured throughout the mother's pregnancy that the fetus was healthy and that the pregnancy was normal. Both parents were present throughout the labor and delivery of their stillborn child. The *Ruark* Court held that, based on the parent-child relationship, the parents' allegations that the child died as the result of the defendant's negligence, and the parents' close proximity to and observation of many of the events surrounding the death and stillbirth of their child, the case could proceed to a jury for a resolution of the cause of action. *Id.* at 306, 395 S.E.2d at 98 ("If they can prove to a jury at trial that they have suffered severe emotional distress and otherwise prove the facts alleged as the basis for their claims, they are entitled to recover damages.")

In *Gardner*, the plaintiff was the mother of a thirteen-year-old boy killed in an automobile accident. The parties stipulated that the defendant, the child's father, was negligent in his operation

of the vehicle in which the child rode, and that the mother had suffered severe emotional distress as a result of the defendant's negligence and the death of her son. The only issue on appeal was whether the mother's emotional distress was a foreseeable result of the father's negligence. *Gardner*, 106 N.C. App. 638, 418 S.E.2d at 262. The *Gardner* Court found that there was no "close proximity" *requirement* for determining foreseeability, and the fact that the mother was never present at the scene of the accident did not work to bar recovery. *Id.* In holding that the proximity factor was not so narrow as to only allow recovery when the parent was at the scene of an accident, the *Gardner* Court concluded that a parent who sees a critically injured child soon after an accident "may be at no less risk of suffering a similar degree of emotional distress than that of a parent who is actually exposed to the scene of an accident." *Id.* at 639, 418 S.E.2d at 263.

In the present case, Mr. Andersen was brought to the scene of the accident after it had occurred, and did not witness the negligent act leading to the death of his wife and son. As such, it appears that his situation is analogous to the facts in the *Gardner* case. Indeed, upon examining both cases on their respective facts, we can discern only one distinguishing fact. In *Gardner*, the facts support the conclusion that the plaintiff's severe emotional distress was foreseeable in light of evidence that a family relationship existed not only between the victim and the plaintiff, but also between the plaintiff and the defendant. As such, the defendant knew of the plaintiff's relationship with the victim prior to the accident and, therefore, could reasonably foresee that negligent activity resulting in injury to the parties' son could cause the plaintiff severe emotional distress. In the present case, however, Mrs. Baccus was a stranger to both Mr. and Mrs. Andersen and, therefore, did not know of the relationship between the plaintiff and the decedent. (It would be mere speculation to draw this distinction with the unknown defendant.) This distinguishing fact also appears under the facts of *Ruark* where the defendants knew both of the plaintiff-parents and in fact had assured the parents that the fetus was healthy and that the pregnancy was normal.

But try as we have by our thorough consideration of *Sorrells*, we cannot distinguish the facts of that case from the case at hand. In *Sorrells*, this Court recognized a potential cause of action for severe emotional distress where a bartender negligently served alcohol to plaintiffs' intoxicated son, who was killed in a car accident

due to his intoxication, even though plaintiffs were not called to the scene and only "learned" of their son's accident and that his body had been mutilated. *Sorrells*, 108 N.C. App. at 672, 424 S.E.2d at 679. Indeed, the facts of *Sorrells* make no mention as to whether the parents ever actually saw their deceased son in a state of mutilation. Moreover, there was no evidence that the bartender either knew or knew of the plaintiff-parents. Nothing distinguishes *Sorrells* from this case.

While the limitations of *Ruark* have not yet been established by our Supreme Court, we believe that the plaintiff's contention goes beyond the holding of the *Ruark* Court. Plaintiff's urging that this Court find the family relationship between the plaintiff and the decedent sufficient to send the question of foreseeability in the present case to the jury, effectively asks us to recognize a cause of action based on negligent infliction of emotional distress in every instance where a family member learns, after the fact, of the injury or death of a relative resulting from a negligently caused accident. Nonetheless, while we do not believe that our Supreme Court's holding in *Ruark* was intended to have such an unlimited and all-encompassing effect, we must follow the precedent as currently set forth by this Court and find that it was error for the trial court to grant summary judgment on this issue. See *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989) ("Where a panel of the Court of Appeals has decided the same issue albeit in a different case, a subsequent panel of the same court is bound by that precedent").

For the foregoing reasons the decision of the trial court is,

Reversed as to summary judgment granted in favor of plaintiff on State Farm's Counterclaim for a declaratory judgment, and

Reversed as to summary judgment granted in favor of defendants on plaintiff's claim for negligent infliction of emotional distress.

Judges EAGLES and ORR concur.