MILO J. HOFFMAN, JR., PLAINTIFF v. GREAT AMERICAN ALLIANCE INSURANCE COMPANY, AMERICAN ALLIANCE INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, INC., F/K/A AGRICULTURAL INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY, DEFENDANTS

No. COA03-947

(Filed 21 September 2004)

**Insurance— uninsured motorist—collision with bicycle— police report and timely notice of claim**

　　Summary judgment was correctly granted for defendants on an uninsured motorist claim arising from a bicycle accident where plaintiff made no showing that he complied with clear and unambiguous policy terms or the statutory requirements of N.C.G.S. § 20-279.21(b)(3)(b). Plaintiff never filed a police report and waited five days to contact his insurance agent; he

**HOFFMAN v. GREAT AM. ALLIANCE INS. CO.**

[166 N.C. App. 422 (2004)]

expressed doubt in his initial statements about whether he had been struck at all and his bicycle showed no damage; and his failure to provide information to the police on the day of the accident materially prejudiced the insurer's ability to investigate and defend the claim.

Appeal by plaintiff from judgments entered 2 May 2003 and 9 May 2003 by Judge Kenneth C. Titus in Orange County Superior Court. Heard in the Court of Appeals 21 April 2004.

*Poe, Hoof & Associates, by J. Bruce Hoof, for plaintiff-appellant.*

*Haywood, Denny & Miller, L.L.P., by George W. Miller, Jr., for defendants-appellees.*

TYSON, Judge.

Dr. Milo J. Hoffman, Jr. ("plaintiff") appeals from summary judgment entered for Great American Alliance Insurance Company, American Alliance Insurance Company, and Great American Assurance Company, Inc., (collectively, "defendants") and the trial court's dismissal of plaintiff's action with prejudice for failure of plaintiff to: (1) allege specific facts upon which to base a claim; and (2) allege compliance with conditions precedent to making a claim for uninsured motorist ("UM") coverage. We affirm.

## I. Background

Plaintiff was riding his bicycle on the edge of a two-lane road at 7:30 a.m. on 8 July 1999 while on vacation in Ocean Drive Beach, South Carolina. A car approached plaintiff from behind and attempted to pass him. As the car "pulled out to pass [plaintiff], [the driver] didn't pull out very far." Plaintiff claimed that before the car passed by him completely, "I turned my bike away from the vehicle and started to go off the road. And my attention is diverted and I am not looking to the left. I am looking to the right where I am getting ready to go looking for, you know, any obstacles or anything." No other vehicles were on the road and plaintiff was able to describe in detail information about the driver and the vehicle.

Plaintiff stated his bicycle was traveling between 18 and 20 miles per hour at the time of the incident and the vehicle was traveling approximately 25 miles per hour. When asked about the topography of the land surrounding the road, plaintiff stated in his deposition

there "was a little grass growing, yeah. I mean, it's sand with grass growing in it, but there's grass." Plaintiff further claims before he fell off his bike, "there's a good possibility the front wheel had already left the roadway" and "a third of the driver's car" had already passed him.

After falling, plaintiff thought he only skinned his knee. He finished his bike ride then rode back to his vacation home without reporting the accident to the police. As the day progressed, plaintiff's wrist and arm began swelling and he sought treatment at North Myrtle Beach Emergency Care where his wrist and elbow were x-rayed twice. The doctor on duty told plaintiff that his wrist was sprained and recommended that plaintiff wear a sling for a few days. Plaintiff did not notify a law enforcement officer, his insurance agent, or defendants of the alleged "hit and run" accident.

Plaintiff returned to his home in Chapel Hill four days after the accident. Plaintiff felt increased pain in his arm and sought treatment on 13 July 1999 from Dr. Paul Wright, an orthopaedic surgeon, who correctly diagnosed and treated plaintiff for two fractures in his right arm. Plaintiff is a right-handed dentist, and the injury hampered his ability to practice dentistry in his usual manner for a substantial period of time.

On the same day plaintiff learned that he had fractured his right arm, plaintiff contacted his insurance agent, Don White. Plaintiff had an automobile insurance policy with defendants that provided plaintiff with UM coverage. Plaintiff's coverage required that "[defendants] must be notified promptly of how, when and where the accident or loss happened." Furthermore, plaintiff's coverage stated that "[a] person seeking Uninsured or Combined Uninsured/Underinsured Motorists Coverage must also: 1. Promptly notify the police if a hit-and-run driver is involved." On 19 July 1999, plaintiff's insurance agent responded to plaintiff by letter that stated:

> Given that you cannot categorically state that you were actually struck by the hit and run automobile, and that a report was not made to the local police department, thoughts of a UM claim did not even enter my mind. In fact, in the absence of actually having been struck by the automobile, I was of the impression that the possibility of even having a compensable Medical Payments claim was doubtful.

Plaintiff's insurance agent filed a UM claim on 19 July 1999.

**HOFFMAN v. GREAT AM. ALLIANCE INS. CO.**

[166 N.C. App. 422 (2004)]

On 11 August 1999, defendants contacted plaintiff by letter requesting a recorded statement via telephone. Defendants spoke with plaintiff on 17 August 1999 and recorded his statement regarding the accident. In the statement, plaintiff told defendants that he "believe[d] that the driver kind of bumped my rear tire . . . and that's what sent me flying." When defendants asked plaintiff if he was certain the car made contact with the bike, plaintiff responded:

Uh, what is certainty? Do I have damage to my bicycle? No. Do I have memory that I was absolutely struck beyond a shadow of a doubt. But it is my belief that I was bumped by the car because of the way that all things happened . . . I mean, I'm riding my bike, everything's fine, I'm turning away from that car and the next thing I know I'm flying through the air.

Defendants denied plaintiff's claim on 9 September 1999 because plaintiff "advised [he] could not make a statement under oath that a vehicle struck [him]." After plaintiff's claim was denied, he retained an attorney. Plaintiff's attorney received a letter from defendants on 6 December 1999 stating that the claim was denied because, "[y]our client's statement was unclear as to whether or not he was struck by this phantom vehicle."

Plaintiff filed a complaint on 8 July 2002 against defendants alleging defendants failed to compensate plaintiff for bodily injury pursuant to plaintiff's UM coverage provided by defendants. On 29 October 2002 defendants answered, denied they breached their obligation to compensate plaintiff, moved to dismiss pursuant to Rule 12(b)(6), and alleged plaintiff failed to comply with the requirements for filing a UM claim. Defendants moved for and were granted summary judgment on 11 April 2003. Plaintiff appeals.

## II. Issue

The sole issue is whether the trial court erred in granting defendant's motion for summary judgment on the grounds plaintiff failed to comply with the requirements of the insurance policy.

## III. Standard of Review

Our standard to review the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 707-08, 582 S.E.2d 343, 345 (2003), *aff'd*, 358 N.C. 137, 591 S.E.2d 520 (2004), *reh'g*

*denied*, 358 N.C. 381, 597 S.E.2d 129 (2004) (citing *Willis v. Town of Beaufort*, 143 N.C. App. 106, 108, 544 S.E.2d 600, 603, *disc. rev. denied*, 354 N.C. 371, 555 S.E.2d 280 (2001)); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

> A defendant may show entitlement to summary judgment by "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense."

*Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *James v. Clark*, 118 N.C. App. 178, 181, 454 S.E.2d 826, 828, *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 187 (1995)). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.'" *Draughon*, 158 N.C. App. at 708, 582 S.E.2d at 345 (quoting *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. rev. denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001)).

## IV. Conditions Precedent and Statutory Requirements

Here, plaintiff does not assert that summary judgment was inappropriately granted because genuine issues of material facts are in dispute. Rather, plaintiff argues the trial court erred in its interpretation of a question of law. We disagree. A policyholder's failure to "promptly" notify the insurer and law enforcement of an accident involving a hit and run driver, as required by both the insurance policy and N.C. Gen. Stat. § 20-279.21(b)(3)(b), serves as a bar to plaintiff's UM claim. The trial court reached the appropriate conclusion of law.

## A. Statutory Provisions

The specific statutory and policy provisions upon which defendants rely are found in the Financial Responsibility Act ("FRA") at N.C. Gen. Stat. § 20-279.21(b)(3)(b). Plaintiff's UM coverage requires "[defendants] must be notified promptly of how, when and where the accident or loss happened." Further, plaintiff's policy stated that "[a] person seeking Uninsured or Combined Uninsured/Underinsured Motorists Coverage must also: 1. Promptly notify the police if a hit-and-run driver is involved."

The statutory provision governing UM claims requires:

[w]here the insured, under the uninsured motorist coverage, claims that he has sustained bodily injury as the result of collision between motor vehicles and asserts that the identity of the operator or owner of the vehicle (other than a vehicle in which the insured is a passenger) cannot be ascertained, the insured may institute an action directly against the insurer: *Provided, in that event the insured, or someone in his behalf, shall report the accident within 24 hours or as soon thereafter as may be practicable, to a police officer . . . .*

N.C. Gen. Stat. § 20-279.21(b)(3)(b) (emphasis supplied). "The provisions of the statute enter into and form a part of the policy." *Lichtenberger v. Insurance Co.*, 7 N.C. App. 269, 273, 172 S.E.2d 284, 287 (1970).

The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute. *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991); *Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). "The avowed purpose of the [FRA] . . . is to compensate the innocent victims of financially irresponsible motorists." *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763. The Act is remedial in nature and is "to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Id.* The purpose of the Act, "is best served when [every provision of the Act] is interpreted to provide the innocent victim with the fullest possible protection." *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989).

While there is no dispute concerning the established purpose of the FRA, the statute requires "physical contact," which shows the intent to "protect insurance companies from fraudulent hit and run claims that were actually caused by the insured's negligence." *Andersen v. Baccus*, 109 N.C. App. 16, 20, 426 S.E.2d 105, 108 (1993) (citing *McNeil v. Hartford Accident and Indemn. Co.*, 84 N.C. App. 438, 442, 352 S.E.2d 915, 917 (1987)).

"The legislative purpose of a statute is first ascertained by examining the statute's plain language." *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain

and definite meaning, and are without power to interpolate, or super-impose, provisions and limitations not contained therein." *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 Strong, N.C. Index 2d, Statutes § 5 (1968)). The plain language of N.C. Gen. Stat. § 20-279.21(b)(3)(b) states "the insured, or someone in his behalf, *shall* report the accident within 24 hours or as soon thereafter as may be practicable, to a police officer[.]" (Emphasis supplied).

Defendants assert plaintiff never filed a police report, despite his detailed knowledge of the car and driver that purportedly hit him, and that he was advised to do so, in the insurance agent's letter to plaintiff, dated 19 July 1999. The requirement that the insured must contact a law enforcement officer satisfies both purposes of the FRA: (1) to protect innocent victims; and (2) to prevent fraudulent claims. When, the insured fails to comply with the statutory requirements of prompt notice of hit and run incidents to the police, the legislature's intent to prevent fraudulent claims is nullified.

In addition to requiring notice of a hit and run to the police, both N.C. Gen. Stat. § 20-279.21(b)(3)(b) and the insurance policy require notice of the accident to the insurance carrier. We find no cases that have previously interpreted the notice to police provisions under the UM statute. Plaintiff argues our Supreme Court's interpretation of "notice to insurance carriers" applies to notice to the police, citing *Great American Ins. Co. v. C. G. Tate Construction Co.*, 315 N.C. 714, 340 S.E.2d 743 (1986) ("*Tate I*") and *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573 S.E.2d 118 (2002) ("*Pennington*").

Plaintiff asserts it is logical that the Supreme Court's interpretation of the notice to carrier provision regarding liability claims (*Tate I*) and underinsured motorists ("UIM") claims (*Pennington*) applies equally to the notice to police provision for UM claims presented here. Under N.C. Gen. Stat. § 20-279.21(b)(4), there is no requirement that the *underinsured* motorist notify the police. The statute merely directs the insured to "give notice of the initiation of the suit to the underinsured motorist insurer." N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis supplied). The statute does not prescribe the type of notice, the content of the notice, or the method by which it is to be given. The statute is similarly devoid of any particulars concerning the time frame when notice to the insurer must be provided. Given the lack of direction and specificity of N.C. Gen. Stat. § 20-279.21(b)(4) regarding the notification requirement, we do not agree the legislature intended N.C. Gen. Stat. § 20-279.21(b)(3)(b) to be interpreted as "liberally" as N.C. Gen. Stat. § 20-279.21(b)(4), par-

**HOFFMAN v. GREAT AM. ALLIANCE INS. CO.**

[166 N.C. App. 422 (2004)]

ticularly when a hit and run, a serious criminal act, occurred. *See Proctor*, 324 N.C. at 225, 376 S.E.2d at 764.

The differences in the two notice requirements show the legislature did not intend these provisions be constructed the same. N.C. Gen. Stat. § 20-279.21(b)(3)(b) unequivocally requires that "the insured, or someone in his behalf, *shall* report the accident within 24 hours or as soon thereafter as may be practicable, to a police officer . . . ."(Emphasis supplied). In sharp contrast, N.C. Gen. Stat. § 20-279.21(b)(4) does not specify the form, substance, or manner of the notice to be given the UIM carrier. These key distinctions show the legislature's intent that plaintiff is subject to the more stringent requirements of N.C. Gen. Stat. § 20-279.21(b)(3)(b), not the notice provision of N.C. Gen. Stat. § 20-279.21(b)(4) as plaintiff asserts. Plaintiff's claim for UM benefits was absolutely barred by his failure to comply with the specific notice requirements as set forth in N.C. Gen. Stat. § 20-279.21(b)(3)(b), and the plain and unambiguous requirements of the insurance contract. Defendant asserts plaintiff *never* notified any law enforcement officer of the alleged accident.

### B. Analysis Under *Tate I* and *Pennington*

Plaintiff argues the *Tate I* and *Pennington* analysis should be extended to hit and run UM claims. We disagree. Plaintiff failed to meet the three-prong test devised by the Supreme Court in liability claims (*Tate I*) and UIM claims (*Pennington*). *Pennington* set forth the three-pronged test to determine whether late notice to an *insurer* bars recovery:

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

*Pennington*, 356 N.C. at 580, 573 S.E.2d at 124 (quoting *Great Am. Ins. Co.*, 303 N.C. at 399, 279 S.E.2d at 776). Here, plaintiff concedes that he did not notify defendants of the claim for UM coverage on the day he was injured, or immediately thereafter, and does not affirmatively assert he ever filed a police report to comply with the statute or the express provisions of the insurance contract.

Plaintiff also fails the second prong of the *Tate I* analysis: whether plaintiff acted in good faith after his failure to timely notify defendants. The record shows that plaintiff did not "promptly" notify defendants of the alleged accident. Under our Supreme Court's analysis of the three-part test, the good faith inquiry is a subjective inquiry that examines a plaintiff's actual knowledge at the time of the accident. *Tate*, 315 N.C. at 720, 340 S.E.2d at 747.

Plaintiff testified in his deposition that on the day of the accident, his wrist became sore. As the day progressed, plaintiff sought treatment at North Myrtle Beach Emergency Care, where his wrist and elbow were x-rayed twice. The doctor on duty told plaintiff that his wrist was sprained and that he should wear a sling for a few days. Plaintiff did not contact defendants or the police. On the day of the accident, plaintiff "actually" knew he had suffered a bodily injury and failed to "promptly" report it to either his insurance agent or to law enforcement. Plaintiff expressed doubt whether the vehicle made any contact with plaintiff's bicycle in his reports to his agent and in his recorded interview. Instead, plaintiff waited five days to contact his insurance agent and never filed the police report.

The third prong of the *Pennington* test is: whether the delay materially prejudiced the insurer's ability to investigate and defend the UM claim as a result of the delay. 356 N.C. at 580, 573 S.E.2d at 124. The following factors are relevant considerations by the fact-finder:

> the availability of witnesses to the accident; the ability to discover other information regarding the conditions of the locale where the accident occurred; any physical changes in the location of the accident during the period of delay; the existence of official reports concerning the occurrence; the preparation and preservation of demonstrative and illustrative evidence, such as the vehicles involved in the occurrence, or photographs and diagrams of the scene; the ability of experts to reconstruct the scene and the occurrence; and so on.

*Insurance Co.*, 303 N.C. at 398, 279 S.E.2d at 776 (quoting *Great Am. Ins. Co. v. C.G. Tate Constr. Co.*, 46 N.C. App. 427, 437, 265 S.E.2d 467, 473 (1980), *modified by*, 303 N.C. 387, 279 S.E.2d 769 (1981)).

The third prong of the *Pennington* test is not designed to determine whether the insurer has suffered material prejudice in any and all respects. Rather, the prejudice relates to the ability of the insurer

to investigate and attempt to discover the identity of the hit and run driver to defend the claim in question. *See Great Am. Ins. Co.*, 303 N.C. at 397-400, 279 S.E.2d at 775-77. In his statement to the insurance company, plaintiff states:

> I can tell you that there was a lady driving the car, I can tell you that she did not appear to be a really young person or a real old gray haired. I can tell you that the car was a whitish color, possibly an off white, or a real dirty car, a dirty white, and an American car, not a brand new one. . . . the license plate was almost an orange kind of color. I spotted a license plate at a distance a couple of days later that appeared to be the same color and as I drove up on that car it was a Pennsylvania plate[.]

Further, in his deposition, plaintiff testified that the driver was a Caucasian female and no passengers were traveling with the driver. Given the incident occurred in a resort area, at the height of the tourist season, on a clear morning, where no other vehicles were present and the specificity of detail the plaintiff knew about the possible out-of-state driver and vehicle, his failure to "promptly" provide this pertinent information to the police on the day of the accident materially prejudiced the insurer's ability to investigate, determine the identity of the driver of the vehicle, and its ability to defend the UM claim. Substantial evidence in the record supports the trial court's conclusion. Plaintiff's argument to extend the three-pronged test in *Tate I* and *Pennington* to determine whether late notice to an *insurer* bars recovery is without merit. The UM statute clearly and plainly requires the filing of a police report and notice within a reasonable time to the insurer for hit and run UM claims.

### V. Conclusion

Viewed in the light most favorable to plaintiff, plaintiff made no showing that he complied with the clear and unambiguous policy terms or statutory requirements of N.C. Gen. Stat. § 20-279.21(b)(3)(b). Plaintiff was put on notice from his insurance agent, less than eleven days after the incident occurred, of the requirement to file a police report. In his initial statements to his insurance agent and in his recorded statement within a month after the accident, plaintiff expressed doubt whether he had been struck at all. Plaintiff's bicycle showed no damage and he continued to ride his undamaged bicycle for blocks following the incident. The trial court properly granted summary judgment to defendants. The judgment of the trial court is affirmed.

Affirmed.

Judges McGEE and TIMMONS-GOODSON concur.