MADELINE BECKER, DAVID D. BECKER, JOHN BECKER, AND JOHN YAHN,
PLAINTIFFS v. JAMES H. PIERCE, DEFENDANT

No. COA04-794

(Filed 1 March 2005)

**1. Malicious Prosecution— summary judgment—elements— issues of fact**

The trial court erred by granting defendant's motion for summary judgment concerning the claim of malicious prosecution. While investigating agents found merit in some of defendant's claims prior to entering plaintiffs' property and arresting two of the plaintiffs, the jury should be allowed to consider the factual issue of whether defendant initiated the criminal proceedings against plaintiffs. Moreover, there were also issues of fact about malice and probable cause.

**2. Discovery— sanctions—compliance with order**

The trial court did not abuse its discretion by denying plaintiffs' motion for sanctions against defendant for failure to comply with an order compelling discovery where defendant produced the three documents required by the court, although plaintiffs contend that there was also a fourth document.

Appeal by plaintiffs from order entered 23 January 2003 by Judge J. Richard Parker in Gates County Superior Court. Heard in the Court of Appeals 2 February 2005.

*The Twiford Law Firm, L.L.P., by Branch W. Vincent, III, for plaintiffs-appellants.*

*Hornthal, Riley, Ellis & Maland, L.L.P., by L. Phillip Hornthal, III, and Clayton W. Cheek, for defendant-appellee.*

TYSON, Judge.

Madeline Becker, David D. Becker, John Becker, and John Yahn (collectively, "plaintiffs") appeal: (1) a grant of summary judgment entered for James H. Pierce ("defendant") concerning a claim of malicious prosecution; and (2) denial of plaintiffs' motion for sanctions against defendant. We affirm in part, reverse in part, and remand.

BECKER v. PIERCE

[168 N.C. App. 671 (2005)]

I.  Background

In 1996, plaintiffs purchased a home in Gates County, adjacent to property owned by defendant. Sworn statements and testimony by both parties indicated that over the years their relationship became less than amicable.

Defendant was a confidential informant to the North Carolina Department of Motor Vehicles ("DMV"). On 9 September 1997, defendant mailed a letter to the DMV alerting them to potentially stolen vehicles located on plaintiffs' property. On 1 December 1997, defendant mailed a letter to Sheriff Elmo Benton ("Sheriff Benton") of Gates County describing various events that had transpired since plaintiffs had moved next door. This list included:

1.  For Sale sign stolen.

2.  John Becker damaged a bridge on [plaintiffs'] property making it impossible to cross with farm equipment.

3.  John Becker dug two holes on defendant's property in an attempt to fix the bridge.

4.  Defendant has had a trailer stolen.

5.  David Becker harassed defendant while he was meeting with a prospective buyer of some of defendant's property. Specifically, David Becker drove a riding lawn mower in the vicinity of where defendant was conducting his business.

6.  Lumber has been stolen from defendant's property.

7.  Old lawn mowers were dumped onto defendant's property.

8.  John Becker tampered with line stobs after defendant's property was surveyed.

9.  John Becker spoke (ugly) to a potential buyer of some of defendant's property.

10.  An individual who works on defendant's property had timber [stolen].

11.  John Becker moved property of the surveyor who was surveying defendant's property without the surveyor's permission.

BECKER v. PIERCE

[168 N.C. App. 671 (2005)]

In October 1998, the DMV received a fax from defendant that claimed plaintiffs were operating an unlicensed junkyard, selling vehicles without a dealer's license, not paying taxes on any income, stealing vehicles from Virginia to resell or "chop," and driving unlicensed or untitled vehicles. The fax also alleged that plaintiffs "would steal anything they can get their hands on" and have "no respect for other people's property." On 17 August 1999, defendant mailed a third letter to DMV accusing plaintiffs of illegal conduct.

Defendant's letters to both the Gates County Sheriff's Department and the DMV initiated an investigation of plaintiffs. On 28 October 1998, employees of the DMV, North Carolina Highway Patrol, and the Gates County Sheriff's Department went to plaintiffs' property, viewed the suspicious vehicles from the public road, and entered plaintiffs' property without a search warrant to investigate the alleged illegal activities. Plaintiffs provided certificates of title for all the vehicles, and the investigators determined that none of the vehicles were stolen. However, DMV inspectors found evidence of forged inspection stickers and altered vehicle identification numbers ("VIN"). John and David Becker were arrested and indicted for forgery of an inspection sticker and possession of a vehicle with an altered VIN.

The charges against David Becker were dismissed. The State dismissed all but one charge, forging an inspection certificate, against John Becker. Following trial, the jury returned a verdict of not guilty.

On 1 October 2001, plaintiffs filed a complaint against defendant for attachment, defamation, abuse of process, and punitive damages. Plaintiffs' allegations also supported a claim for malicious prosecution. Defendant answered and filed motions to dismiss all plaintiffs' claims for abuse of process and punitive damages. Plaintiffs voluntarily dismissed the defamation claim. The trial court denied defendant's remaining motions. Defendant filed a motion for summary judgment on 27 February 2003.

On 7 March 2003, plaintiffs served defendant with an amended notice of deposition and a request to produce documents under N.C. Gen. Stat. § 1A-1, Rule 34. Defendant responded by filing an objection to discovery and a motion for a protective order. The trial court overruled defendant's request and ordered him to produce three letters requested by plaintiffs.

On 29 September 2003, defendant filed a motion to compel discovery, motion for sanctions, motion to sequester plaintiffs, and motion that law enforcement be present during any court proceeding attended by John Becker. Plaintiffs moved for a protective order on 2 October 2003. On 16 October 2003, the trial court entered an order granting defendant's four motions. Plaintiffs' motion for a protective order was denied.

On 6 November 2003, defendant moved for sanctions contending that plaintiffs had not complied with the trial court's 16 October 2003 order. In response, plaintiffs filed their own motion for sanctions on 11 November 2003, asserting that defendant failed to abide by the trial court's 7 April 2003 order. Following a hearing on 5 January 2003, the trial court granted defendant's motion for summary judgment and denied both parties' motions for sanctions. Plaintiffs appeal.

## II. Issues

The issues are whether the trial court properly: (1) granted defendant's motion for summary judgment; and (2) denied plaintiff's motion for sanctions.

## III. Malicious Prosecution

[1] Plaintiffs argue the trial court erred in granting defendant's motion for summary judgment concerning the claim of malicious prosecution. We agree.

### A. Standard of Review

This Court reiterated the standard of review of a trial court's grant of summary judgment in *Hoffman v. Great Am. Alliance Ins. Co.*, 166 N.C. App. 422, 601 S.E.2d 908 (2004).

Our standard to review the grant of a motion for summary judgment is whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific

facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

*Id.* at 425-26, 601 S.E.2d at 911 (internal citations and quotations omitted).

## B. Analysis

To succeed in a claim for malicious prosecution, a plaintiff must allege and prove: "(1) defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff." *Best v. Duke University,* 337 N.C. 742, 749, 448 S.E.2d 506, 510 (citing *Jones v. Gwynne,* 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984)), *reh'g denied,* 338 N.C. 525, 452 S.E.2d 807 (1994). Defendant does not dispute the existence of the fourth element, "termination of the earlier proceeding in favor of the plaintiff." Our analysis focuses on the first three elements. We further note that criminal proceedings were only instituted against John and David Becker. Madeline Becker and John Yahn were not arrested or indicted. Accordingly, they do not have standing to assert claims of malicious prosecution and summary judgment against them on this claim was proper.

### 1. Initiation of Earlier Proceeding

" 'It cannot be said that one who reports suspicious circumstances to the authorities thereby makes himself responsible for their subsequent action, . . . even when . . . the suspected persons are able to establish their innocence.' " *Harris v. Barham,* 35 N.C. App. 13, 16, 239 S.E.2d 717, 719 (1978) (quoting *Charles Stores Co. v. O'Quinn,* 178 F.2d 372, 374 (4th Cir. 1949)). However, where "it is unlikely there would have been a criminal prosecution of [a] plaintiff" except for the efforts of a defendant, this Court has held a genuine issue of fact existed and the jury should consider the facts comprising the first element of malicious prosecution. *Williams v. Kuppenheimer Manufacturing Co.,* 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992).

There is no dispute that defendant provided the initial information that led to the warrantless search of plaintiffs' property and their arrest. DMV Inspector H. Hardy Gillam, Jr. ("Inspector Gillam") provided an affidavit submitted on defendant's behalf that defendant's letters spurred the investigation into plaintiffs' business activities and their property. Inspector Gillam contacted other DMV agents, the

National Insurance Crime Bureau ("NICB"), and the Virginia State Police Auto Theft Unit ("VSPATU") about the possible infractions after receiving defendant's documents.

Inspector Gillam personally conducted a visual inspection of plaintiffs' property and determined, "it was my professional opinion that the information provided to me by [defendant's letters] was correct." Inspector Gillam witnessed numerous vehicles sitting on the property, some without license plates, some with "For Sale" signs. He testified that, "[m]y visual inspection of the suspected location revealed a circumstance consistent with a backyard salvage operation." Following his personal investigation, Inspector Gillam contacted the local DMV office, the NICB, and the VSPATU to confirm his earlier reports. This led to the onsite investigation of plaintiffs' property.

Viewed in the light most favorable to plaintiffs, the evidence tends to show the police investigation into plaintiffs' alleged illegal practices was instigated initially by defendant's letters. While Inspector Gillam and the other investigating agents found merit in some of defendant's claims prior to entering plaintiffs' property and arresting John and David Becker, the jury should be allowed to consider the factual issue of whether defendant "initiated" the criminal proceedings against plaintiffs. *See Williams*, 105 N.C. App. at 201, 412 S.E.2d at 900.

### 2. Malice

"Malice" in a malicious prosecution claim may be shown by offering evidence that defendant "was motivated by personal spite and a desire for revenge" or that defendant acted with " 'reckless and wanton disregard' " for plaintiffs' rights. *Moore v. City of Creedmoor*, 345 N.C. 356, 371, 481 S.E.2d 14, 24 (1997) (quoting *Jones v. Gwynne*, 312 N.C. 393, 405, 323 S.E.2d 9, 16 (1984)).

Defendant admitted in his deposition that conflict existed between he and plaintiffs since they became neighbors in 1996. He complained to plaintiffs about their trespassing onto his property, leaving scrap metal on his property, and interfering with a potential sale of his real property. Further, inferences in defendant's letter of 1 December 1997 to Sheriff Benton allege illegal activity by plaintiffs.

Viewed in the light most favorable to plaintiffs, this evidence creates a genuine issue of material fact concerning whether defendant

BECKER v. PIERCE

[168 N.C. App. 671 (2005)]

acted maliciously when he initiated the investigation of plaintiffs. *See Von Viczay v. Thomas*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (quotation omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001).

### 3. Probable Cause

Our Supreme Court has defined probable cause with respect to malicious prosecution as:

> "the existence of such facts and circumstances, known to [the defendant] at the time, as would induce a reasonable man to commence a prosecution." *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966) (quoting *Morgan v. Stewart*, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907). Whether probable cause exists is a mixed question of law and fact, but where the facts are admitted or established, the existence of probable cause is a question of law for the court. *Id.* at 171, 147 S.E.2d at 914.

*Best*, 337 N.C. at 750, 448 S.E.2d at 510. The test for determining probable cause is " 'whether a man of ordinary prudence and intelligence under the circumstances would have known that the charge had no reasonable foundation.' " *Wilson v. Pearce*, 105 N.C. App. 107, 113-14, 412 S.E.2d 148, 151 (quoting *Hitchcock v. Cullerton*, 82 N.C. App. 296, 298, 346 S.E.2d 215, 217 (1986)), *disc. rev. denied*, 331 N.C. 291, 417 S.E.2d 72 (1992).

Defendant, acting as a confidential informant for the DMV, gathered the evidence he submitted to the DMV and Sheriff's Office by observing his neighbors' activities and property. The issue of fact is whether the preexisting personal conflicts plaintiffs and defendant caused defendant's informant status to become a collateral pretext for him submitting reports to the DMV. This is a factual question the jury should consider. *See Dickerson v. Refining Co.*, 201 N.C. 90, 95, 159 S.E. 446, 449 (1931) ("Evidence that the chief aim of the prosecution was to accomplish some collateral purpose, or to forward some private interest . . . is admissible, both to show the absence of probable cause and to create an inference of malice, and such evidence is sufficient to establish a prima facie want of probable cause.") (citations omitted).

### C. Conclusion

Based on our discussion and review of the facts *de novo*, we hold the trial court erred in granting summary judgment in defendant's

favor. Viewed in the light most favorable to plaintiffs, proffered evidence created genuine issues of material fact to support the elements of malicious prosecution.

## IV.  Sanctions

**[2]** Plaintiffs assert the trial court erred in denying their motion for sanctions against defendant. We disagree.

Rule 37(b)(2) of the North Carolina Rules of Civil Procedure authorizes a trial court to sanction a party for failure to comply with a court order compelling discovery. N.C. Gen. Stat. § 1A-1, Rule 37(b) (2003). The trial court is given broad discretion to "make such orders in regard to the failure as are just" and authorized to, among other things, prohibit the introduction of certain evidence, strike pleadings, dismiss the action, or render judgment against the disobedient party. *Id.*

This Court reviews a trial court's ruling on sanctions under the abuse of discretion standard. *Roane-Barker v. Southeastern Hospital Supply Corp.*, 99 N.C. App. 30, 36, 392 S.E.2d 663, 667 (1990) (citations omitted), *disc. rev. denied*, 328 N.C. 93, 402 S.E.2d 418 (1991). "A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *Hursey v. Homes by Design, Inc.*, 121 N.C. App. 175, 177, 464 S.E.2d 504, 505 (1995) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

Here, plaintiffs requested defendant, in a notice of deposition, to produce "any letter, document or other written instrument given to any law enforcement official or agency which mentions, identifies or otherwise makes reference to Madeline Becker, David Becker, John Becker, and John Yahn." Defendant responded by filing an objection to discovery and motion for protective order, claiming such documents were confidential and privileged. The trial court reviewed three documents *in camera* and determined they were relevant and discoverable. Defendant subsequently produced the three documents as required by the trial court's order.

Plaintiffs assert, as the basis for sanctions, there was a fourth document, the October 1998 fax to DMV, which defendant failed to produce. However, the trial court's order required defendant to produce three letters, which he did. Plaintiffs have failed to show that the trial court abused its discretion and its order was not the result of a

**IN RE V.L.B.**

[168 N.C. App. 679 (2005)]

reasoned decision. There is no evidence in the record to suggest defendant did not comply with the trial court's order compelling production of the three letters. This assignment of error is overruled.

### V. Conclusion

The trial court's grant of summary judgment against plaintiffs Madeline Becker and John Yahn was proper. Plaintiffs proffered sufficient evidence to create genuine issues of material fact concerning the disputed elements of malicious prosecution. Plaintiffs failed to show the trial court abused its discretion in denying their motion for sanctions against defendant. The trial court's order is affirmed in part, reversed in part, and remanded.

Affirmed in part, reversed in part, and remanded.

Judges McGEE and GEER concur.