GREAT AMERICAN INSURANCE COMPANY v. C. G. TATE CONSTRUCTION COMPANY

No. 326PA85

(Filed 18 February 1986)

**Insurance § 96.1— accident—failure to give timely notice—lack of good faith**

      The trial court's findings were sufficient to support the conclusion of the trial court that defendant's failure to notify plaintiff liability insurer as soon as practicable after an accident lacked good faith and plaintiff was therefore relieved of its duty to honor its obligations under the policy with defendant where the trial court's findings revealed that employees and agents of defend-

ant were aware of the serious nature of the accident; a piece of defendant's construction equipment was destroyed because of its proximity to the site of the accident; eyewitnesses' versions of how the accident occurred and who was to blame conflicted with some versions indicating that defendant was to blame, and certain of defendant's employees were aware of both the blame and the conflict; the foreman of the road crew notified his superiors of the on-site accident; defendant was therefore charged with the foreman's knowledge of facts and circumstances indicating potential liability; and defendant's employees discussed the question of the necessity of reporting the accident to plaintiff but deliberately chose not to do so.

ON plaintiff's petition for discretionary review of the decision of the Court of Appeals, 74 N.C. App. 424, 328 S.E. 2d 891 (1985), which reversed the judgment signed by *Bailey, J.,* on 6 June 1984 in Superior Court, WAKE County, and remanded the cause for further proceedings. Heard in the Supreme Court 17 December 1985.

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Robert W. Sumner, for plaintiff appellant.*

*Nye & Mitchell, by Charles B. Nye and Edmund D. Milam, Jr., for defendant appellee.*

MARTIN, Justice.

This case concerns insurance policy notice provisions requiring that an insured notify the insurer "as soon as practicable" and positing that the requirement operates as a condition precedent to coverage. The question of how to construe that provision and this case have been before this Court once before, in *Insurance Co. v. Construction Co.,* 303 N.C. 387, 279 S.E. 2d 769 (1981).

The course of events culminating in this appeal was initiated by the collision of a fuel truck with an automobile, which occurred on 6 April 1976 on a two-lane road that was in the process of being widened by C. G. Tate Construction Company. The drivers of both vehicles and a third motorist who witnessed the accident asserted that a front-end loader had backed onto the road surface in front of the truck, causing its driver to swerve into the other lane and collide head on with the car, which had been travelling in the opposite direction. Two of Tate's employees and a bystander who had witnessed the accident reported that the truck had been travelling *behind* the car and that it had apparently braked sharply and jackknifed when the car slowed or stopped. The colli-

sion caused the tanker to disconnect from the truck, roll over the car, and burst into flames. The front-end loader, which the Tate witnesses testified had been parked ten feet from the edge of the highway, was extensively damaged by fire from the accident.

The investigating officer first interviewed the Tate employees, then spoke with the injured drivers, then returned to the accident scene where he informed A. G. Foster, the Tate foreman, of the discrepancies between the eyewitnesses' reports. The officer did not issue a citation to Tate, but television and newspaper accounts reported within thirty-six hours of the accident that it had been caused by Tate's construction vehicle, when it had pulled out onto the highway in front of the fuel truck. The investigator's official report drew the same conclusion.

That evening, Mr. Foster called Tate's general job superintendent, William Lee Robertson, and told him that an accident had occurred on the Tate job site, that the front-end loader had been damaged, and that Tate employees had been involved in pulling injured drivers from their vehicles. Mr. Robertson asked Mr. Foster whether the insurance company should be informed, but the latter replied that he thought not because "we wasn't involved in no way." Mr. Foster was aware that the media reports blamed Tate for the accident, and that the newspaper later "tried to straighten it up," but he did not relate his concern over the media's "confusion" to his superiors because he considered the correction to be more a matter of public relations than one of liability. Eddie Wyatt, the driver of the front-end loader, was likewise aware that the media reports had blamed the accident on his vehicle, and he discussed the accounts with other employees, including Mr. Foster.

The following Monday, Mr. Robertson mentioned to Mr. Tate, Sr., that the accident had occurred, and he told Mr. Tate that he had talked to Mr. Foster and to highway personnel, who had assured him that the Tates were not involved.

Tate never reported the accident to its insurer, Great American Insurance Company. The latter became aware of the accident independently, through its capacity as the workers' compensation carrier for the employer of the fuel truck driver.

Great American subsequently instituted a declaratory judgment action against Tate, requesting judicial determination of

whether Tate's failure to notify vitiated the insurer's coverage obligations. The trial judge, relying upon *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960), found for the insurer, holding that Tate's failure to notify the insurer " 'as soon as practicable' was not justified or excusable under the circumstances" and violated a condition precedent to coverage under its policy with Great American. The Court of Appeals reversed and remanded, distinguishing the facts of this case from those in *Muncie* by the presence of an explanation for the lack of notice (Tate's alleged unawareness of involvement) and by the unresolved question of whether the insurer had been prejudiced by the delay. *Insurance Co. v. Construction Co.*, 46 N.C. App. 427, 265 S.E. 2d 467 (1980).

This Court allowed Great American's petition for discretionary review and modified and affirmed the decision of the Court of Appeals. *Insurance Co. v. Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981) [hereinafter referred to as *Great American*]. In *Great American* we rejected a strict contract construction of the notice requirement and overruled the *Peeler-Muncie-Fleming* line of cases. *Fleming v. Insurance Co.*, 261 N.C. 303, 134 S.E. 2d 614 (1964); *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474; *Peeler v. Casualty Company*, 197 N.C. 286, 148 S.E. 261 (1929). We chose instead to follow the modern trend of construing the notice requirement in insurance contracts "in accord with its purpose and with the reasonable expectations of the parties." *Insurance Co. v. Construction Co.*, 303 N.C. at 390, 279 S.E. 2d at 771. Because the timely notice requirement exists in order to enable the insurer to prepare a defense by preserving its ability to investigate an accident, any delay[1] that did not prejudice the insurer did not vitiate coverage. *Id.* at 397, 279 S.E. 2d at 775. In order to discourage dilatoriness, however, this rule was restricted to the insured's "good faith" delay or failure to notify. We proposed a three-part test in order to determine the insurer's duty to defend:

> When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was

---

1. Failure to notify is effectively a delay in the insurer's receipt of notice. Our reference to "delay" therefore comprehends situations like that in the case sub judice, where the insurer became aware of the accident through some means other than notice by the insured.

given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

*Id.* at 399, 279 S.E. 2d at 776.

On remand, the trial court measured its findings of fact against this test. The court concluded, first, that Tate had not given Great American notice of the accident and of potential claims arising therefrom as soon as practicable, and second, that the failure to notify had lacked good faith. The trial court relied upon the Restatement (Second) of Contracts § 205 at 100 (1981), and said that, in the context of business entities dealing at arm's length, "unreasonable or unfair dealings can amount to a lack of good faith." By such standards, Tate's failure to notify Great American "lacked good faith." Finally, even though it found that Tate lacked good faith in failing to notify Great American, the trial court proceeded to the third step of the test, concluding that Great American had not been prejudiced by the lack of notice and that it was therefore liable on its policy with Tate.

Great American appealed to the Court of Appeals, which reversed. *Insurance Co. v. Construction Co.*, 74 N.C. App. 424, 328 S.E. 2d 891 (1985). The Court of Appeals held that the trial court had erred in two ways: first, it had applied an objective, "reasonable man" standard to the question of good faith, rather than the subjective standard the appellate court perceived as mandated by this Court's *Great American* opinion. Second, the Court of Appeals found that the trial court had improperly considered the question of prejudice. It remanded the case once more, requiring the trial court to apply only a subjective standard to the question of good faith and to reach the question of prejudice to the insurer only if good faith was found.

We find the reasoning of the court below to have been essentially correct; but, in our view, there is no need for the evidence to be assessed by the trial court a third time. The findings of fact of the trial court are sufficient to support the conclusion that Tate's failure to notify Great American lacked good faith. Where

a lack of good faith is found, it is not necessary to determine the issue of prejudice to the insurer. *Insurance Co. v. Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769.

The first step of the *Great American* test is for the trier of fact "when faced with a claim that notice was not timely given, [to] . . . decide whether the notice was given as soon as practicable." 303 N.C. at 399, 279 S.E. 2d at 776. "Practicable" has been defined as "that which is performable, feasible, possible," Black's Law Dictionary 1055 (5th ed. 1979), and this Court's pre-*Great American* interpretation of the notice requirement posited that "whether . . . notice was given within a reasonable time depends on the facts and circumstances" of the case. *Harris v. Insurance Co.*, 261 N.C. 499, 135 S.E. 2d 209 (1964). "As soon as practicable" was read as permitting justified or excusable delay, and it alleviated the otherwise harsh effects of a strict contractual construction of the notice requirement.[2] In *Great American* this Court redefined the "notice as soon as practicable" provision to mean that the requirement is satisfied despite any delay in notifying the insured, so long as it is occasioned in good faith *and* the insurer is not materially prejudiced.

More precisely phrased, the first step in the *Great American* test simply requires the trial court to determine whether there has been any delay[3] in notifying the insurer. In most instances, unless the insurer's allegations that notice was not timely are patently groundless, this first part of the test is met by the fact that the insurer has introduced the issue to the court. Therefore only the good faith and prejudice steps remain to be addressed by the trial court.

---

2. *Insurance Co. v. Construction Co.*, 46 N.C. App. 427, 434-35, 265 S.E. 2d 467-472. In this case's first appearance before the Court of Appeals, that court attempted to reconcile the *Muncie* line of cases, in which no excuse or justification for delayed notice had been given, with cases like this one. This court rejected the appellate court's effort, finding the *Muncie* approach of strict contract construction and the Court of Appeals' proposed approach of focusing on prejudice to the insurer irreconcilable. 303 N.C. at 392, 279 S.E. 2d at 772.

3. How much time must pass between the occurrence and notice before the period is determined to be a "delay" is a question of law for the court. *See* 13A Couch on Insurance 2d § 49.81 (rev. ed. 1982). However, notice "as soon as practicable" is distinguishable from "immediate" notice only by the consideration of extenuating circumstances, justification, or excuse—factors this Court rejected in *Great American* in favor of limiting the question of reasonable or practicable notice to the good faith and prejudice tests.

The first of these, the "requirement that any period of delay beyond the limits of timeliness . . . [be] in good faith" was carefully defined by this Court in *Great American*:

> Anyone who knows that he may be at fault or that others have claimed he is at fault and who purposefully and knowingly fails to notify ought not to recover even if no prejudice results.

303 N.C. at 399, 279 S.E. 2d at 776. This test of lack of good faith involves a two-part inquiry:

1) Was the insured aware of his possible fault, and

2) Did the insured purposefully and knowingly fail to notify the insurer?

Both of these are, in the legal sense of the term, "subjective" inquiries—they ask not what a reasonable person in the position of the insured would have known, but what the insured *actually did know*. Certainly, if the insured knows that he is liable or even that he will possibly be held liable, or that others claim that he is at fault, an untimely delay in notification of the insured is a delay without good faith.[4]

The good faith test is phrased in the conjunctive: both knowledge *and* the deliberate decision not to notify must be met for lack of good faith to be shown. If the insured can show that either does not apply, then the trial court must find that the insured acted in good faith. (Only at this point would the court proceed to examine whether the insurer was prejudiced by the delay.) For example, if the insured was unaware of the accident or, if aware, he had no actual awareness of any accusation that he might be liable, then his failure to notify, though deliberate, is in good faith. Conversely, if the insured has knowledge of potential liability but is injured and cannot notify the insurer, or does not know he is covered, then his failure to notify is not purposeful,

---

4. Of course, if good faith is found to be lacking, the court need not inquire into and the insurer need not prove prejudice.

and the delay is in good faith.[5] Similarly, where the insured simply negligently forgets to report the accident, there is knowledge, but there is no knowing, purposeful failure to notify the insurer. But where the insured does not think he is involved but knows that claims might be filed against him, and he fails to notify the insurer because of that uncertainty, then there is both actual knowledge of possible liability *and* there is a knowing and purposeful decision not to inform the insurer. That decision is one made without good faith and the insurer is relieved of the responsibilities otherwise imposed by its policy with the insured, even if it was not prejudiced by the delay.

The judgment of the trial court, filed 7 June 1984, reported the following findings of fact:

> Thomas [the driver of the fuel truck] was seriously injured, Pegg [the driver of the automobile] injured, the automobile was destroyed as a result of the collision and ensuing fire as well as the tractor and tanker.
>
> . . . .
>
> At the time and place of the accident in question, a number of employees of the insured, including defendant's job foreman, A. G. Foster, Jr., were present and actually witnessed all or part of the accident while acting in the course and scope of their employment with the insured. . . .

---

5. It is interesting to note that the two-pronged test of good faith would permit delay (except for the prejudice inquiry) under the same circumstances that, under pre-*Great American* cases, were held to justify late notice. One court using a strict contract construction approach to notice provisions identified four general situations in which late notice is excusable:

"1. Insured's lack of knowledge of the accident.

"2. Insured's belief that the accident was trivial and no claim would be made.

"3. Insured's belief that he was not covered.

"4. Insured's illness."

*Employers Casualty Co. v. Scott Electric Co.*, 513 S.W. 2d 642 (Tex. Civ. App. 1974). North Carolina courts have likewise recognized some of these circumstances as excusing delay. *See Ball v. Employers Assurance Co.*, 206 N.C. 90, 172 S.E 878 (1934) (insured ignorant that an injury had been caused by the accident); *Mewburn v. Assurance Corporation*, 198 N.C. 156, 150 S.E. 887 (1929) (delay occasioned by shock and depression); *Rhyne v. Insurance Company*, 196 N.C. 717, 147 S.E. 6 (1929) (delay occasioned by insanity). *See also* 13A Couch on Insurance 2d §§ 49:91, :93, :94 (rev. ed. 1982).

Great American Ins. Co. v. C. G. Tate Construction Co.

. . . .

. . . Officer Cole . . . says that he told Mr. Foster about Mrs. Pegg's version of the manner in which the accident occurred and that her version conflicted with the version of the employees of the defendant. . . . Officer Cole further testified that he didn't remember what, if anything, Mr. Foster said, however, the Court found that Cole did, in fact, discuss the conflicting versions in spite of Mr. Foster's failure to recollect that. . . .

On the night of the accident or the night following the accident, Foster telephoned William Lee Robertson, the insured's general superintendent, at his home in Winston-Salem, North Carolina, and among other things advised Robertson that there had been an accident on the project but assured Robertson that the insured was in no manner involved in the accident and that there was no reason to report the accident to the insurer because Foster was an eyewitness and actually observed that nothing the insured did caused the accident.

On Monday following the accident, Robertson casually mentioned the accident to Mr. Tate, Sr., and Jr., who are the officers of the insured and who are located in Concord, North Carolina. Robertson advised the Tates that he had talked with Foster and highway personnel and that he had been assured that the Tates were not involved and he also assured the Tates that they were not involved.

. . . .

The scene of the accident was photographed by representatives of the local newspaper and by representatives of the local television station. Newspaper reports were published and a television report was made on the evening news, both of which indicated that the accident was caused by construction equipment belonging to the defendant coming onto the highway, causing a truck to swerve and collide head-on with Pegg's Chevrolet. Although the insured's foreman, Foster, was aware of the reports in the news media, blaming the accident on the defendant within 24 to 36 hours after the accident, he did not read the newspaper or see the television

program because he lived in Nebo, North Carolina, and commuted back and forth to work. An attempt was made the following day by the media to correct the erroneous reports.

These findings reveal that employees and agents of the C. G. Tate Construction Company were aware of the serious nature of the accident; that a piece of construction equipment was destroyed because of its proximity to the site of the accident; that eyewitnesses' versions of how the accident occurred and who was to blame conflicted, that some versions indicated that Tate was at fault, and that certain Tate employees were aware of both the blame and the conflict; and that Tate employees discussed the question of the necessity of reporting the accident to Great American but deliberately chose not to do so. These findings reveal actual knowledge on the part of Foster and other Tate employees that others claimed Tate was to blame and that the company might be held responsible. This Court has recognized the general rule that "[a] principal is chargeable with and bound by the knowledge of or notice to his agent, received while the agent is acting as such within the scope of his authority and in reference to which his authority extends." *Roberts v. Memorial Park*, 281 N.C. 48, 60, 187 S.E. 2d 721, 728 (1972). We hold that the foreman of a road crew is invested with the authority to notify his superiors of an on-site accident, as Mr. Foster did Mr. Robertson, and defendant Tate is therefore charged with Foster's knowledge of facts and circumstances indicating potential liability. *See generally* 8 J. Appleman, *Insurance Law and Practice* § 4742 (1981 & Supp. 1983).

With such knowledge—both imputed and actual—Tate authorities made a purposeful decision not to notify the insurer.[6]

---

6. The judgment of the trial court included the following additional findings of fact, which argue that Tate's failure to notify the insurer was in good faith:

"Robertson also discussed the accident with South Carolina State Highway Engineer D. J. Wilson, who was the resident engineer in charge of the construction project. The conversation took place within three to five days after the accident and Robertson was assured by Wilson that Tate was not involved in the accident. During the week following the accident, Robertson also visited the project and again discussed the matter with Wilson who again reiterated that Tate was not involved in the accident and that 'we had just better be glad that we wasn't involved because it was a pretty bad accident, a man got hurt in the fire and all.'

. . . .

We hold that the trial court's findings are sufficient to support the conclusion of the trial court that Tate's failure to notify the insurer "lacked good faith." Therefore, the insurer was relieved of its duty to honor its obligations under the policy with Tate.

We reverse the decision of the Court of Appeals and remand to the Court of Appeals for further remand to the trial court for entry of judgment not inconsistent with this opinion.

Reversed.

---

At the time of the filing of the Complaint, the insured still had no information that it had been involved in the accident, having been assured by all of its eyewitnesses that the accident was solely caused by the speed of the tanker which overran the Chevrolet in the northbound lane of the highway when the Chevrolet stopped to make a left turn. Subsequent to the filing of the Complaint and Answer, the insurer offered evidence by Norma Jean Pegg, the driver of the Chevrolet automobile, Robert Allen Thomas, driver of the tanker, and Vernon E. Roe, which tended to contradict all of the other eyewitnesses."

These points are persuasive, but they do not convince us that the delay was in good faith. They overlook the fact that Tate's foreman was aware that his employer was being blamed for the accident by some, including the investigating officer's official report, and that eyewitness accounts differed. This was sufficient information to have provoked further inquiry, at the very least, by Tate authorities into the circumstances surrounding the accident and the records and news reports that followed it. Willful ignorance does not exemplify good faith.