F. BARRY DIGH, Plaintiff v. NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant

No. COA07-153

(Filed 18 December 2007)

**Insurance— boat insurer—delayed notice of claim—not reasonable**

> An insurer had no duty to cover a loss from damage to a boat where the policy language about notice was ambiguous and the notice given was purposefully delayed through bad faith (a desire to keep premiums from increasing).

Appeal by Plaintiff from judgment entered 31 October 2006 by Judge Richard Doughton in Catawba County Superior Court. Heard in the Court of Appeals 12 September 2007.

> *Homesley Goodman & Wingo, PLLC, by Andrew J. Wingo, for Plaintiff-Appellant.*

> *Robinson Elliott & Smith, by William C. Robinson, for Defendant-Appellee.*

STEPHENS, Judge.

On 31 May 2002, Defendant Nationwide Mutual Fire Insurance Company ("Nationwide") issued an insurance policy to Plaintiff F. Barry Digh ("Digh") to cover Digh's 1998 Eliminator 25-foot powerboat. The front page of the policy assured Digh that he "now [had] a different kind of insurance policy. One that's readable, understandable, straight-forward." Nevertheless, after Digh's boat was damaged in an accident on Lake Norman in July 2002, Nationwide and Digh find themselves engaged in a dispute over the meaning of the notice provision in the policy's "Physical Damage Coverage" section:

SECTION I—CONDITIONS

. . . .

2. **Your Duties after Loss**. In case of a loss, **you must**:

  a) give notice to us or our agent, and in case of theft also to the police as soon as possible.

Nationwide contends this provision obligated Digh to notify Nationwide of the damage to the boat "as soon as possible" after

the accident. Digh, on the other hand, argues he was only obligated to give notice "*as soon as possible*" *to the police* in case of theft, and that the provision is silent as to when he was required to give notice to Nationwide in case of a loss. From the trial court's grant of summary judgment in favor of Nationwide, Digh appeals.

BACKGROUND

On 28 July 2002, Digh was operating his boat on Lake Norman when, according to Digh, a four or five-foot "rogue wave" hit the boat, launching the boat "probably four to six feet out of the water" and ejecting Digh into the lake. Upon getting back on board the boat, Digh saw that the boat had suffered "stress cracks" in the fiberglass of the cockpit area and that the engine "was not quite what it was" before the encounter with the wave, in that he had to turn the key in the ignition "several times to get it to start." Digh drove the boat back to his boathouse, covered it, and raised it out of the water on his boat lift in his boathouse. At that point, Digh knew some work would have to be done on the boat to fix the stress cracks and engine damage, but Digh thought the cost of repairs would be about "fifteen hundred dollars plus the engine." Digh did not file a claim with Nationwide because he wanted "to keep [his] insurance from going up." The boat remained undisturbed on the boat lift for the next five months.

Around December 2002, Digh brought the boat to Admiral Marine Service ("Admiral") to have it winterized. Digh kept the boat at Admiral until November 2004 because he "was trying to save enough money to fix it [himself]." In November 2004, he brought the boat to Performance Engines ("Performance") to have the engine repaired. Performance removed and fixed the engine at a cost of approximately eighty-three hundred dollars. About three weeks after bringing the boat to Performance, Digh brought the boat back to Admiral. At Admiral, Digh discovered a softball-sized hole in the boat's hull. The cost to repair the stress cracks and the hole was estimated to be between fifteen and twenty-four thousand dollars.

In March 2005, Digh filed a claim with Nationwide for damage to the boat from the July 2002 accident. The parties did not settle Digh's claim, and, on 11 July 2005, Digh filed a complaint against Nationwide in which he asserted five causes of action: (1) breach of contract, (2) breach of contract duty to settle covered claim, (3) breach of fiduciary relationship, (4) bad faith refusal to settle, and (5) unfair and deceptive trade practices. On 10 October 2006, Nationwide filed a motion for summary judgment. On 31 October 2006, the trial court

granted summary judgment in favor of Nationwide on all of Digh's causes of action.

## STANDARD OF REVIEW

As a preliminary matter, Digh, in his brief, does not specifically argue that the trial court erred in granting summary judgment on any one particular claim which he advanced before the trial court. It is evident, however, that the extent of Digh's argument to this Court is that the trial court erred in entering summary judgment on his first cause of action: breach of contract. Accordingly, we affirm summary judgment in favor of Nationwide on Digh's other four claims and limit our review to the trial court's entry of summary judgment on Digh's breach of contract claim. *See* N.C. R. App. P. 28(a) ("The function of all briefs required or permitted by these rules is to define clearly the questions presented to the reviewing court and to present the arguments and authorities upon which the parties rely in support of their respective positions thereon. Review is limited to questions so presented in the several briefs.").

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [a] party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). "Evidence presented by the parties is viewed in the light most favorable to the non-movant." *Id.* (citing *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

## BREACH OF CONTRACT

We begin by noting that insurance policies are considered contracts between two parties. *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967). "[I]t is the duty of the court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties." *Id.* at 346, 152 S.E.2d at 440 (citations omitted). "Insurance contracts are construed according to the intent of the parties, and in the absence of ambiguity, we construe them by the plain, ordinary and accepted meaning of the language used." *Integon Gen. Ins. Corp. v. Universal Under-*

*writers Ins. Co.*, 100 N.C. App. 64, 68, 394 S.E.2d 209, 211 (1990) (citing *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 238, 152 S.E.2d 102, 105-06 (1967)).

"An ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Maddox v. Colonial Life & Accident Ins. Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981) (citing *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970)). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988) (citing *Mazza v. Med. Mut. Ins. Co.*, 311 N.C. 621, 630, 319 S.E.2d 217, 223 (1984)). "The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company." *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522 (citations omitted).

Generally, " '[i]f no time for the performance of an obligation is agreed upon by the parties, then the law prescribes that the act must be performed within a reasonable time.' " *Int'l Minerals & Metals Corp. v. Weinstein*, 236 N.C. 558, 561, 73 S.E.2d 472, 474 (1952) (quoting *Rocky Mt. Sav. & Trust Co. v. Aetna Life Ins. Co.*, 199 N.C. 465, 469, 154 S.E. 743, 745 (1930) (citations omitted)).

In the opinion of this Court, the language of the notice provision at issue is fairly and reasonably susceptible to either of the constructions advanced by the parties and, thus, this language is ambiguous:

2. **Your Duties after Loss.** In case of a loss, **you must**:

a) give notice to us or our agent, and in case of theft also to the police as soon as possible.

To clearly and unambiguously achieve the result espoused by Nationwide, the provision could be phrased as is the notice provision in the policy's "Liability Coverages" section:[1]

---

1. Digh's claim against Nationwide did not arise under the "Liability Coverages" section of the policy. This section only applies to claims made or suits brought *against Digh* because of an occurrence or property damage caused by the use of the boat.

**4. Duties after Loss**. In case of an accident or **occurrence**, the **insured** will perform the following duties that apply. You will cooperate with us in seeing that these duties are performed:

a) Give notice to us or our agent as soon as practicable[.]

As written, however, the notice provision in the policy's "Physical Damage Coverage" section is ambiguous and uncertain.[2] As "any ambiguity or uncertainty . . . must be resolved in favor of the policyholder," *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522, the interpretation advanced by Digh must prevail. That is, Digh was not obligated to give notice to Nationwide "as soon as possible," and the contract does not specify a time for the performance of Digh's obligation. There being no time specified, however, Digh was required to give notice to Nationwide of the loss within a reasonable time. *Int'l Minerals & Metals Corp., supra.*

DELAYED NOTICE

Both parties contend that the proper resolution of this case depends on our application of the test announced by our Supreme Court in *Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 303 N.C. 387, 279 S.E.2d 769 (1981) (*"Great American I"*). In that case, a controversy arose after an automobile accident which an injured third-party asserted was caused by the fault of the insured. The insurer sought declaratory relief that it had no obligation to defend or indemnify the insured in any suit arising out of the accident because the insured failed to give notice to the insurer "as soon as practicable," as the insurance contract unambiguously required. *Id.* at 390, 279 S.E.2d at 771. Overruling a long line of cases,[3] the Supreme Court held that the insured's failure to give notice, by itself, did not relieve the insurer of its obligations under the policy. Instead, the Court

---

2. Alternatively, the provision might include a well-placed comma, as such:

   2. **Your Duties after Loss**. In case of a loss, **you must**:

   a) give notice to us or our agent, and in case of theft also to the police, as soon as possible.

Or, the provision might be re-phrased as follows:

   2. **Your Duties after Loss**. In case of a loss, **you must**, as soon as possible:

   a) give notice to us or our agent, and in case of theft also to the police.

3. *Fleming v. Nationwide Mut. Ins. Co.*, 261 N.C. 303, 134 S.E.2d 614 (1964); *Muncie v. Travelers Ins. Co.*, 253 N.C. 74, 116 S.E.2d 474 (1960); *Peeler v. U.S. Cas. Co.*, 197 N.C. 286, 148 S.E. 261 (1929).

create[d] a three-step test for determining whether the insurer is obliged to defend. When faced with a claim that notice was not timely given, the trier of fact must first decide whether the notice was given as soon as practicable. If not, the trier of fact must decide whether the insured has shown that he acted in good faith, *e.g.*, that he had no actual knowledge that a claim might be filed against him. If the good faith test is met the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay.

*Great American I*, 303 N.C. at 399, 279 S.E.2d at 776. In *Great Am. Ins. Co. v. C. G. Tate Constr. Co.*, 315 N.C. 714, 340 S.E.2d 743 (1986) ("*Great American II*"), the Court emphasized that an insurer only has the burden of showing prejudice if the insured has shown that he acted in good faith.

Th[e] test of lack of good faith involves a two-part inquiry:

1) Was the insured aware of his possible fault, and

2) Did the insured purposefully and knowingly fail to notify the insurer?

*Great American II*, 315 N.C. at 720, 340 S.E.2d at 747. Nationwide argues that Digh delayed giving notice of the loss and that the delay was in bad faith. Digh, on the other hand, argues that the delay was in good faith and that Nationwide suffered no resulting prejudice.

Before applying the *Great American* test to the facts of this case, we note that the language of the test suggests that it is to be applied in cases involving third-party claims against an insured. *See Great American I*, 303 N.C. at 399, 279 S.E.2d at 776 (stating that the trier of fact must decide whether the insured had "actual knowledge that a claim might be filed *against him*[,]" and that, if so, the burden then shifts to the insurer to show that "its ability to investigate and *defend* was materially prejudiced" by the delay) (emphasis added); *Great American II*, 315 N.C. at 720, 340 S.E.2d at 747 ("Was the insured aware of his possible *fault* . . . ?") (emphasis added). However, the Supreme Court has also applied the test in a case involving a first-party claim brought by the insured against the insurer. *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573 S.E.2d 118 (2002). In *Pennington*, the insured sought to recover from the insurer under the insurance policy's underinsured motorist provisions after the insured was injured in an automobile accident. The insurer sought declara-

tory relief that it was not required to provide coverage because the insured did not comply with the policy's notice provision which required the insured to "[p]romptly send [the insurer] copies of the legal papers if a suit is brought." *Id.* at 578, 573 S.E.2d at 123. In applying the *Great American* test, the Court clearly stated that the test is to be used in "determining whether late notice to an insurer bars recovery[.]" *Id.* at 580, 573 S.E.2d at 124.

The Court's decisions in *Great American I* and *II* and *Pennington* guide and instruct our resolution of the case at bar. Accordingly, "the first step in the *Great American* test simply requires the trial court to determine whether there has been any delay in notifying the insurer." *Great American II*, 315 N.C. at 719, 340 S.E.2d at 747 (footnote omitted). The loss in the case *sub judice* occurred on 28 July 2002. Digh did not give notice of the loss to Nationwide until March 2005. It is beyond dispute that there was a delay in notifying the insurer. Thus, we must determine if Digh acted in good faith.

While Digh was not aware of the full extent of the damage until December 2004, Digh acknowledges that he was aware of the loss on the day it occurred. Digh further admits that the only reason he delayed notice was to prevent his insurance premiums from increasing. In other words, Digh was aware of the loss and he purposefully and knowingly delayed giving notice to Nationwide. Thus, Digh's delay was not in good faith, and Nationwide, therefore, had no duty to cover the loss to Digh's boat. The trial court properly entered summary judgment in favor of Nationwide on Digh's breach of contract claim.

AFFIRMED.

Judges McCULLOUGH and CALABRIA concur.