NORTH CAROLINA COUNTIES LIABILITY AND PROPERTY JOINT RISK MANAGE-
MENT AGENCY, Plaintiff v. ERNEST M. CURRY, JR., Defendant

No. COA06-1664

(Filed 1 July 2008)

**Insurance— policy covering sheriff's department—set-off pro-
vision—ambiguous**

The structure and language of a county sheriff's department's
insurance policy supported a deputy's interpretation of set-off
provisions applicable to underinsured motorist coverage as
requiring a deduction for third party payments from total dam-
ages rather than policy limits. Plaintiff's (the insurer's) view is
also reasonable, which means that the policy is ambiguous and
the construction that favors the insured will be accepted.

Appeal by defendant from order entered 22 September 2006 by
Judge Paul L. Jones in New Hanover County Superior Court. Heard in
the Court of Appeals 22 August 2007.

*Teague, Campbell, Dennis & Gorham, LLP, by Courtney C.
Britt, William A. Bulfer and George H. Pender, for plaintiff-
appellee.*

*Baker & Slaughter, P.A., by H. Mitchell Baker, III and M. Troy
Slaughter, for defendant-appellant.*

GEER, Judge.

Defendant Ernest M. Curry, Jr. appeals from a summary judg-
ment order entered in favor of plaintiff, the North Carolina
Association of County Commissioners' North Carolina Counties Lia-
bility and Property Joint Risk Management Agency ("NCACC/LPP").
The sole question presented by this appeal is whether the set-off pro-
visions applicable to underinsured motorist coverage under the
NCACC/LPP policy require that sums received by Curry from other
sources be deducted from Curry's total damages or from the policy's

limits of liability. Because the policy is ambiguous on this point, we are required to construe the policy in favor of Curry, as the insured, and, therefore, we hold that the set-off provisions require deduction from Curry's total damages and not from the policy's liability limits. Consequently, we reverse the trial court's entry of summary judgment in favor of NCACC/LPP.

## Facts

On 16 April 2003, Curry, a deputy sheriff for New Hanover County, was riding in a patrol car owned by New Hanover County and operated by another deputy sheriff, Stanley B. Taylor. While on patrol, Taylor pursued a car operated by Joseph E. Hanible. Taylor and Hanible were traveling in opposite directions when Taylor turned the patrol car diagonally across the street in an attempt to block Hanible's car. Hanible's car collided with the patrol car, seriously injuring Curry.

Curry filed a workers' compensation claim as well as a motor vehicle negligence action against Hanible. NCACC/LPP answered Curry's negligence complaint as an unnamed defendant on 2 May 2005. At the time of the accident, NCACC/LPP, under contract with New Hanover County, provided insurance coverage to the New Hanover County Sheriff's Department under NCACC/LPP's Insurance Pool Fund. This policy included uninsured ("UM") and underinsured ("UIM") motorist coverage with a limit of $100,000.00 for UIM coverage.

Curry ultimately received $114,295.28 in workers' compensation benefits, and Hanible's liability carrier tendered its policy limits of $30,000.00. The parties have stipulated in this action that Curry's damages as a result of the 2003 accident are $300,000.00.

On 17 June 2005, NCACC/LPP filed this declaratory judgment action seeking a determination that the set-off provisions in the New Hanover County policy had exhausted all available UIM coverage. On 26 July 2005, Curry filed an answer and counterclaim contending that he should receive $100,000.00 in UIM coverage. Shortly thereafter, the parties filed cross motions for summary judgment.

On 22 September 2006, the trial court entered an order concluding: (1) the set-off provisions of the policy had exhausted all available coverage under the policy, and (2) no remaining coverage was available to Curry under the applicable contract. The court accordingly granted NCACC/LPP's motion for summary judgment and denied

Curry's motion for summary judgment. Curry timely appealed to this Court.

### Discussion

In this case, there is no dispute regarding the relevant facts. The sole issue is the proper construction of the NCACC/LPP policy and its UM/UIM coverage provisions. Both parties agree that North Carolina's Motor Vehicle Safety and Financial Responsibility Act is inapplicable to New Hanover County's insurance policy as a result of N.C. Gen. Stat. § 20-279.32 (2007), which states: "This Article does not apply to . . . the operator of a vehicle owned by a county . . . who becomes involved in an accident while operating such vehicle in the course of the operator's employment as an employee or officer of the county . . . ."

As a result, the terms of the New Hanover policy control regarding what UIM coverage is available to Curry. "The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95, *disc. review denied*, 352 N.C. 590, 544 S.E.2d 783 (2000). *See also Certain Underwriters at Lloyd's London v. Hogan*, 147 N.C. App. 715, 718, 556 S.E.2d 662, 664 (2001) ("The construction and application of insurance policy provisions to undisputed facts is a question of law, properly committed to the province of the trial judge for a summary judgment determination."), *disc. review denied*, 356 N.C. 159, 568 S.E.2d 188 (2002).

Nevertheless, a policy "is subject to judicial construction only where the language used in the policy is ambiguous . . . ." *Mizell*, 138 N.C. App. at 532, 530 S.E.2d at 95. An ambiguity exists when " 'the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties.' " *Digh v. Nationwide Mut. Fire Ins. Co.*, 187 N.C. App. 725, 728, 654 S.E.2d 37, 39 (2007) (quoting *Maddox v. Colonial Life & Acc. Ins. Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981)).

If the language is clear and unambiguous, then the court must enforce the policy as it is written. *Mizell*, 138 N.C. App. at 532, 530 S.E.2d at 95. In cases of ambiguity, however, "the policy must be construed in favor of coverage and against the insurer[.]" *Id.* Although "[a]mbiguity in the terms of the policy is not established simply because the parties contend for differing meanings to be given to the language," *id.*, " '[t]he fact that a dispute has arisen as to the parties'

interpretation of the contract is some indication that the language of the contract is, at best, ambiguous[,]' " *Digh*, 187 N.C. App. at 728, 654 S.E.2d at 39 (quoting *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988)).

The provisions in dispute in this case fall within section III of the New Hanover policy, relating to Business Auto Coverage. They state as follows:

E. <u>Uninsured/Underinsured Motorist Coverage</u>

. . . .

2. <u>Coverage</u>

a. *The Fund will pay all sums the Covered Person is legally entitled to recover as damages from the owner or driver of an Uninsured Motor Vehicle.* The damages must result from Bodily Injury sustained by the Participant or Property Damage, caused by an Accident. The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of·the Uninsured Motor Vehicle.

. . . .

5. <u>Limit of Liability for Section III Uninsured/Underinsured Motorists Coverage</u>.

a. *Regardless of the number of Covered Auto's, Covered Persons, claims made, or vehicles involved in the accident, the most the Fund will˙ pay for all damages resulting from any one accident is the limit of Uninsured/Underinsured Motorist Coverage of this Section III shown in the Declarations Page.*

b. *Any amount payable under Section III, E. Uninsured/Underinsured Motorist Coverage shall be reduced by:*

(1) all sums paid or payable under any workers' compensation, disability benefits, or similar law exclusive of non-occupational disability benefits; and

(2) all sums paid by or for anyone who is legally responsible, including all sums paid under the Contract's liability coverage; and

> (3) all·sums paid or payable under any policy of property insurance.
>
> c. Any amount paid under this coverage will reduce any amount a Participant may be paid under the Contract's liability coverage.

(Emphasis added.)

The parties have stipulated that the amount Curry "is legally entitled to recover as damages," within the meaning of section III(E)(2), is $300,000.00. The limit of liability for UIM coverage under the New Hanover policy, provided for in section III(E)(5)(a), is $100,000.00. The parties further agree that NCACC/LPP is entitled to a set off of $114,295.28 under section III(E)(5)(b)(1) and of $30,000.00 under section III(E)(5)(b)(2). The total amount of the set off is, therefore, $144,295.28.

Curry contends that the amount of $144,295.28 should be deducted from his damages of $300,000.00, leaving an amount of $155,704.72. According to Curry, section III(E)(5)(a) then sets a limit of $100,000.00, so that Curry is entitled to recover $100,000.00 from NCACC/LPP. NCACC/LPP, on the other hand, contends that the set-off amount of $144,295.28 must be deducted from the $100,000.00 limit of liability, with the result that the limits have been exhausted, and NCACC/LPP owes Curry nothing.

The parties agree that no North Carolina court has addressed the issue in this case. The issue has, however, been litigated across the country, although, curiously, neither party cites any of those cases. In some instances, courts have adopted the position taken, in this case, by NCACC/LPP and held that the language of the policy is unambiguous, and the amounts should be deducted from the policy limits. *See, e.g., McGreehan v. Cal. State Auto. Ass'n,* 235 Cal. App. 3d 997, 1005, 1 Cal. Rptr. 2d 235, 240 (1991), *review denied,* 1992 Cal. LEXIS 866 (Feb. 19, 1992); *State Farm Mut. Auto. Ins. Co. v. Coe,* 367 Ill. App. 3d 604, 611-12, 855 N.E.2d 173, 180 (2006). Other courts have also concluded that the language is unambiguous, but require that the amounts be deducted from the total damages—the position taken by Curry in this case. *See, e.g., Victor v. State Farm Fire & Cas. Co.,* 908 P.2d 1043, 1045-46 (Alaska 1996); *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 530-31 (Ind. 2002). A third group has concluded that the policy is ambiguous, both constructions are reasonable, and, therefore, the policy must be construed in favor of the insured with the result that the amounts are deducted from total damages and not the

policy limits. *See, e.g., McKoy v. Aetna Cas. & Sur. Co.*, 281 Md. 26, 30, 374 A.2d 1170, 1172-73 (1977); *Am. Ins. Co. v. Tutt*, 314 A.2d 481, 485-86 (D.C. 1974); *Krombach v. Mayflower Ins. Co.*, 827 S.W.2d 208, 211 (Mo. 1992) (en banc).

If courts, construing almost identical language, cannot agree on how the relevant provisions should be construed, then it seems likely that the language is ambiguous. Certainly, we would be hard pressed to consider unreasonable Curry's proposed interpretation of the language when the highest courts of other states have embraced that construction. Regardless, upon our review of the language at issue, we believe that the policy is reasonably susceptible to the construction urged by Curry and that the policy is, therefore, ambiguous.

The key question in construing the New Hanover policy is: To what does the language "[a]ny amount payable under Section III, E. Uninsured/Underinsured Motorist Coverage," set out in section III(E)(5)(b), refer? The reductions for workers' compensation benefits and other recoveries are taken from this "amount payable."

While NCACC/LPP contends that the policy is referring to "any amount payable" under section III(E)(5)(a), specifying the policy limits for UIM claims, Curry contends that the phrase refers back to section III(E)(2)(a), stating that "[t]he Fund will pay all sums the Covered Person is legally entitled to recover as damages from the owner or driver of an Uninsured Motor Vehicle." Based upon the language of the policy and the policy's structure, we believe Curry's proposed construction is just as reasonable as NCACC/LPP's. *See DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C. App. 598, 602, 544 S.E.2d 797, 800 (2001) ("Since the objective of construing an insurance policy is to ascertain the intent of the parties, the courts should resist piecemeal constructions and should, instead, examine each provision in the context of the policy as a whole.").

The reduction is taken from "[a]ny amount payable *under Section III, E. Uninsured/Underinsured Motorist Coverage.*" (Emphasis added.) The provision thus refers generally to the policy's UM/UIM coverage and does not refer specifically to payments made in accordance with section III(E)(5)(a), the policy limits. *See Beam*, 765 N.E.2d at 530-31 ("The following phrase, 'under this coverage,' is a general phrase contained in insurance agreements that refers to the scope of the initial insuring agreement, not the dollar amount of the policy limit.").

Subsection (2) of Section III(E) is entitled "Coverage." A reasonable reader of the policy could conclude that section III(E)(5)(b)—which mentions "coverage" rather than policy limits—is in fact referring to section III(E)(2). Section III(E)(2)(a), in turn, states: "The Fund will pay all sums the Covered Person is legally entitled to recover as damages from the owner or driver of an Uninsured Motor Vehicle."[1] Thus, section III(E)(5)(b) can reasonably be read as providing that the sums specified in that section shall reduce the "sums the Covered Person is legally entitled to recover as damages," as set out in section III(E)(2)(a).

Significantly, subsections III(E)(5)(a) and III(E)(5)(b) do not reference each other at all. The provisions appear co-equal and nothing specifically indicates that subsection (5)(b) is supposed to be a further limit on subsection (5)(a), as opposed to the subdivisions each being a separate limit on the amounts to be paid by NCACC/LPP when an uninsured or underinsured motorist is involved. *See McKoy*, 281 Md. at 30, 374 A.2d at 1173 (observing that "[t]here is no indication that [the set-off provision] is in any way subordinated to [the limit-on-liability provision]. Both clauses stand on equal footing, and both must therefore be understood as independently modifying the primary liability of Section I").

Indeed, elsewhere in the policy, provisions explicitly distinguish between "coverage" and "liability limit." *See Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 522 (1970) ("Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony."). The definitions section of the policy states that " 'Liability Coverage' means as described in Section III B. Liability Coverage," while " 'Liability Limit' means as described in Section III, C. Fund's Liability Limit." These definitions corroborate Curry's reasoning that the reference in subsection (5)(b) to "Uninsured/Underinsured Motorist Coverage" refers back to the provision regarding "Coverage" in subsection (2) and not the limit on UM/UIM coverage in subsection (5)(a).

In sum, the structure and language of the policy support Curry's interpretation of the set-off provisions as requiring a deduction from the total damages rather than a deduction from the policy limits.

---

1. The policy defines "Uninsured Motor Vehicle" to include underinsured motor vehicles.

Even though NCACC/LPP's view is also reasonable, the existence of two reasonable constructions means that the policy's reference in subsection (5)(b) to "[a]ny amount payable" is ambiguous. Under well-established principles, this ambiguity requires that we accept the construction that favors the insured. *Williams v. Nationwide Mut. Ins. Co*, 269 N.C. 235, 238, 152 S.E.2d 102, 105 (1967).

NCACC/LPP, as the drafter of the policy, had the ability to make plain any contrary intention. For example, in *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 381 (Mo. 1991) (en banc), the policy stated: " '[T]he limit of liability shall be reduced by all sums paid . . . by or on behalf of persons or organizations who may be legally responsible.' " (Emphasis omitted.) *See also Victor*, 908 P.2d at 1048 ("If the reduction clause were meant to apply to the policy limits rather than total damages, it would state, 'limits of liability shall be reduced.' "). Since NCACC/LPP did not remove the ambiguity, we must hold that the trial court erred in construing the policy in the manner proposed by NCACC/LPP.

We note that the purpose of set-off provisions is to prevent double recoveries. *Id.* at 1049 ("The general purpose of a reduction clause is to prevent double recoveries."). The construction that we adopt here does not intrude on that purpose—Curry will not receive duplicative awards, but rather will simply receive compensation for more, although not all, of his total damages. We, therefore, reverse the trial court's order and remand for entry of judgment in favor of Curry.

Reversed.

Judges CALABRIA and JACKSON concur.