EAGLE ENGINEERING, INC., PLAINTIFF v. CONTINENTAL CASUALTY COMPANY, DEFENDANT

No. COA07-1537

(Filed 5 August 2008)

**Insurance— professional liability—claims made and reported policy—summary judgment**

The trial court correctly affirmed summary judgment for defendant insurance company on plaintiff's claim under a professional liability policy where plaintiff did not make its claim within the required 60 days of the policy period. The parties had a plain, unambiguous contract which required that the claim arise during a covered policy period and be made within the policy period or 60 days afterwards.

Appeal by plaintiff from order entered 30 October 2007 by Judge Kimberly S. Taylor in Superior Court, Union County. Heard in the Court of Appeals 15 May 2008.

*James, McElroy & Diehl, P.A. by Richard B. Fennell, for plaintiff-appellant.*

*Jones, Hewson & Woolard by Lawrence J. Goldman, for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals from order entered 30 October 2007 which granted defendant's motion for summary judgment. The dispositive question before this Court is whether the trial court erred in granting defendant's motion for summary judgment. For the following reasons, we affirm.

I. Background

On 27 February 2007, plaintiff Eagle Engineering, Inc. ("Eagle") filed a complaint against defendant Continental Casualty Company ("Continental"). Plaintiff alleged the following in the complaint:

7. Eagle purchased from Defendant a Professional Liability and Pollution Incident Liability Insurance Policy ("the Coverage Agreement") with policy number 11-405-03-06. The policy period for the Coverage Agreement was December 1, 2001, through December 1, 2004.

8. The Coverage Agreement provides, in pertinent part:

A. We will pay all amounts in excess of the deductible up to the limit of liability that you become legally obligated to pay as a result of:

1. a wrongful act; or

2. a pollution incident arising out of your activities or the activities of any person or entity for whom you are liable, that results in a claim anywhere in the world, provided that on the knowledge date set forth on the Declarations no officer, director, principal, partner or insurance manager knew or could reasonably have expected that a claim would be made.

B. A claim arising out of a wrongful act or pollution incident must be first made during the policy year or any applicable extended reporting period. A claim is considered first made when you receive notice of the claim or as set forth in accordance with Section VI. CONDITIONS, Item C., Your Rights and Duties in the Event of a Circumstance.

9. The Coverage Agreement also includes the following descriptive language of the type of coverage provided:

Your professional liability and pollution incident liability insurance policy is written on a "claims-made" basis and applies only to those claims first made against you while this insurance is in force. No coverage exists for claims first made against you after the end of the policy term unless, and to the extent, an extended reporting period applies.

10. Shea Homes, LLC ("Shea"), is a residential home builder that does business throughout North Carolina.

11. Shea filed counterclaims against Eagle in Union County Superior Court Case No. 03-CVS-02057 on March 8, 2004, which were amended August 9, 2004. The gravamen of Shea's counterclaims was that Eagle had improperly performed professional services in a Shea development and that this had led to property damage.

12. Eagle purchased similar insurance coverage from Defendant for the period from January 4, 2006, through January 4, 2007. The coverage language is identical to that set forth in the Coverage Agreement. Eagle was insured with a different carrier for the intervening period.

13. Eagle listed Shea's counterclaims as a pending lawsuit in its application for the 2006 policy year. Defendant accepted the business, and Eagle's premium.

14. Eagle began to ask Defendant to assume the defense and indemnification obligations surrounding Shea's counterclaims as early as November, 2005.

15. Defendant refused, contending that the Coverage Agreement required notice to be received during a policy year in order to trigger coverage.

16. Eagle resolved Shea's counterclaims on the eve of trial after failing to convince Defendant to indemnify against the counterclaims or even pick up the defense.

Plaintiff brought a cause of action against defendant for breach of contract.

On or about 9 May 2007, defendant filed an answer. On or about 17 August 2007, defendant filed a motion for summary judgment. An affidavit from James F. Alderson ("Alderson"), a claims consultant with Continental, referred to Exhibits A and B, Policy Declarations. Exhibit A is "[a] true and accurate copy of [the 11-405-03-06] policy" which ran from 1 December 2001 through 1 December 2004. Exhibit B is "[a] true and accurate copy of [the 27-620-29-33] policy" which ran from 4 January 2006 through 4 January 2007. Within Exhibit B is a "Conditions" section. This section provides,

B. Your Duties If There Is A Claim

If there is a claim, you must do the following:

1. promptly notify us in writing. . . . .

The notice must be given to us within a policy year or within 60 days after its expiration or termination[.]

. . . .

N. Extended Reporting Period

1. Automatic Extended Reporting Period

If this Policy is canceled or non-renewed by either us or by the first Named Insured, we will provide an automatic, non-cancelable extended reporting period starting at the termination of the policy term if the first Named Insured has not obtained sim-

ilar coverage. This automatic extended reporting period will terminate after 60 days.

2. Optional Extended Reporting Period

If this Policy is canceled or non-renewed by either us or by the first Named Insured, then the first Named Insured shall have the right to purchase an optional extended reporting period. Such right must be exercised by the first Named Insured within 60 days of the termination of the policy term[.]

. . . .

4. Extended Reporting Period Limitations

No additional or optional extended reporting period shall apply to:

a. any claim or proceedings pending at the inception date of such extended reporting period[.]

The affidavit further provided,

5. Continental Casualty Company did not provide insurance to Eagle Engineering, Inc. from January 4, 2005 through January 4, 2006.

. . . .

9. From the information provided to the Continental Casualty Company by Eagle Engineering, Inc., the date of the claim for which Eagle Engineering seeks indemnification and a defense in this litigation was August 9, 2004. Notice of this claim was not submitted to CNA and Continental Casualty Company until October 5, 2006.

On 20 September 2007, S. Stephen Goodwin, Jr., trial counsel for Eagle Engineering in the case with Shea, filed an affidavit which stated, "Any delays on Eagles part were either inadvertent or the result of difficulty obtaining information." On this same date Frank L. "Skeet" Gray, III, P.E., a principle [sic] with plaintiff, also filed an affidavit stating, "[T]here was absolutely no purposeful intentional or deliberate decision by Eagle Engineering to delay notification to the Defendant."

On 30 October 2007, the trial court granted defendant's motion for summary judgment because "there is no genuine issue as

**EAGLE ENG'G, INC. v. CONTINENTAL CAS. CO.**

[191 N.C. App. 593 (2008)]

to any material fact that plaintiff did not provide notice of the claim within the policy period or within 60 days after the expiration of the policy period." Plaintiff appeals. The dispositive question before this Court is whether the trial court erred in granting defendant's motion for summary judgment. For the following reasons, we affirm.

## II. Summary Judgment

Plaintiff argues that the trial court erred by granting summary judgment in favor of defendant. Plaintiff contends that

> Continental's position centers on its contention that the Policy at issue is a "claims made," rather than an occurrence policy. Continental's duties, then, depend on the definition of "claims made." A claims made policy generally restricts coverage to those claims which are made against the insured during the policy period. . . . A pure claims-made policy allows a claim to be presented after the policy period has expired. . . . A "claims made and reported" policy, on the other hand, engrafts a second requirement on to the definition of a covered claim. It must be both made to the insured and reported to the carrier within the policy period.

In *Digh v. Nationwide Mut. Fire Ins. Co.* this Court stated,

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law. On appeal of a trial court's allowance of a motion for summary judgment, we consider whether, on the basis of materials supplied to the trial court, there was a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Evidence presented by the parties is viewed in the light most favorable to the non-movant.

> We begin by noting that insurance policies are considered contracts between two parties. It is the duty of the court to construe an insurance policy as it is written, not to rewrite it and thus make a new contract for the parties. Insurance contracts are construed according to the intent of the parties, and in the absence of ambiguity, we construe them by the plain, ordinary and accepted meaning of the language used.

*Digh v. Nationwide Mut. Fire Ins. Co.*, 187 N.C. App. 725, 727-28, 654 S.E.2d 37, 39 (2007) (internal citations, internal quotation marks, brackets, and heading omitted). Furthermore,

> a mere disagreement between the parties over the language of the insurance contract does not create an ambiguity. Rather, no ambiguity exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend. Also, each provision of an insurance contract must be interpreted in view of the whole contract and not in isolation.

*Pennsylvania Nat.'l Mut. Ins. Co. v. Strickland*, 178 N.C. App. 547, 550, 631 S.E.2d 845, 847 (2006) (internal citations, internal quotation marks, ellipses, and brackets omitted).

Both Exhibit A, policy term of 1 December 2001 through 1 December 2004 ("hereinafter "Policy 1"), and Exhibit B, policy term of 4 January 2006 through 4 January 2007, (hereinafter "Policy 2") refer to the attached "Professional Liability Policy." The Professional Liability Policy provides in bold capitalized font at the top of the policy,

> Your professional liability and pollution incident liability insurance policy is written on a "claims-made" basis and applies only to those claims first made against you while this insurance is in force. No coverage exists for claims first made against you after the end of the policy term unless, and to the extent, an extended reporting period applies.

The Professional Liability Policy further provides that notice of a claim "must be given . . . within a policy year or within 60 days after its expiration or termination." Thus, the Professional Liability Policy requires plaintiff's claim to have both arisen during a covered policy term *and* to be reported within a covered policy term or within 60 days thereafter.

The exact date defendant was informed of plaintiff's claim is in contention, but was somewhere between November 2005 and October 2006. Plaintiff, however, contends, defendant was informed of the claim in November of 2005, and we will view the evidence in a light most favorable to plaintiff, the non-movant. *See Digh* at 727-28, 654 S.E.2d at 39.

**EAGLE ENG'G, INC. v. CONTINENTAL CAS. CO.**

[191 N.C. App. 593 (2008)]

### A. Policy 1

As to Policy 1, neither November 2005 nor October 2006 falls within the policy term of 1 December 2001 through 1 December 2004 nor within 60 days thereafter. Therefore, pursuant to the plain language of the policy, Policy 1 does not provide coverage for plaintiff's claim.

### B. Policy 2

As to Policy 2, Shea filed its counterclaims against plaintiff on 8 March 2004 and amended those claims 9 August 2004; 8 March 2004 and 9 August 2004 are not dates during which the 4 January 2006 through 4 January 2007 policy would have been "in force." Therefore, Policy 2 does not provide coverage for plaintiff's claim.

### C. Policies 1 and 2

Viewing the contracts as a whole it is plain that plaintiff's claim must have arisen during a covered policy period *and* plaintiff was required to make its claim within a covered policy period or 60 days thereafter, which plaintiff failed to do. *See Digh* at 727-28, 654 S.E.2d at 39; *Pennsylvania Nat.'l Mut. Ins. Co.* at 550, 631 S.E.2d at 847 (2006). There is no ambiguity within the policy nor any merit to plaintiff's argument, and therefore this argument is overruled.

### D. Prejudice

Furthermore, plaintiff contends that there are "genuine issues of material fact . . . as to whether defendant was prejudiced by the timing of the notice in this case." However, prejudice is irrelevant in light of the fact that the parties have a plain unambiguous contract setting out the terms of the agreement on this issue. *See Digh* at 727-28, 654 S.E.2d at 39; *Pennsylvania Nat.'l Mut. Ins. Co.* at 550, 631 S.E.2d at 847 (2006). This argument is without merit.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's granting of defendant's motion for summary judgment.

AFFIRMED.

Judges McCULLOUGH and TYSON concur.